JANICE M. HOLDER, J.,
delivered the opinion of the court,
in which WILLIAM M. BARKER, C.J., and CORNELIA A. CLARK and GARY R. WADE, JJ., joined.
In this appeal, the primary issue is whether a durable power of attorney for health care authorized the attorney-in-fact to enter into an arbitration agreement as part of a contract admitting the principal to a nursing home and thereby to waive the principal’s right to trial by jury. The case also presents secondary issues relating to the arbitration agreement, including whether this case is governed by the Tennessee Uniform Arbitration Act or the Federal Arbitration Act. We hold that the arbitration agreement is to be interpreted pursuant to the Tennessee Uniform Arbitration Act and that the power of attorney authorized the attorney-in-fact to enter into the arbitration agreement on behalf of the principal. In addition, we reject the plaintiffs arguments that: 1) the arbitration agreement is unenforceable because a material term of the agreement is incapable of performance; 2) the arbitration agreement violates federal law; and 3) pre-dispute arbitration agreements in nursing-home contracts violate public policy. However, we remand the case to the trial court for further proceedings on the question of whether the arbitration agreement is an unconscionable, and thus unenforceable, contract of adhesion.
OPINION
FACTS AND PROCEDURAL HISTORY
On August 5, 2003, Mary Francis King (“King”) executed a Durable Power of Attorney for Health Care (“the power of attorney”) naming Gwyn C. Daniel (“Daniel”) and William T. Daniel as King’s attorneys-in-fact. The power of attorney authorized the attorneys-in-fact “to ASSIST me in making health care decisions, and to make health care decision [sic] for me if I am incapacitated or otherwise unable to make such decisions for myself.” The power of attorney then set out two paragraphs that are based substantially upon similar provisions in the statutory form for a living will. See Tenn.Code Ann. § 32-11-105 (2001). Those two paragraphs provide directions to King’s attorneys-in-fact concerning her care in the event she were to have “a terminal condition, or be in an irreversible coma or permanent vegetative state.”[1]
The power of attorney further provided:
*880 At any time, my Attorney-in-Fact shall have the right to examine my medical records and to consent to their disclosure whether I am incapacitated or not. I grant to my Attorney-in-Fact the power and authority to execute on my behalf any waiver, release or other document which may be necessary in order to implement the health care decisions that this instrument authorizes my Attorney-in-Fact to assist me to make, or to make on my behalf.
This instrument is to be construed and interpreted as a Durable Power of Attorney for Health Care and is intended to comply in all respects with the provisions of Tennessee Code Annotated, § 34-6-201 et seqand all terms used in this instrument shall have the meanings set forth for such terms in the statute, unless otherwise specifically defined herein.
On August 26, 2003, three weeks after executing the power of attorney, King was admitted to NHC Healthcare, Murfrees-boro, a nursing home owned, operated, and managed by the various defendants. The Admission and Financial Contract listed “Gwen [sic] Daniel” as “Legal Representative” and indicated that the “Type” of legal representative was “Power of Attorney.” The contract was signed by Daniel and by John Willie Smith (“Smith”), King’s brother. Smith is not named in the power of attorney, and no other document in the record authorizes him to make decisions on behalf of his sister.
Section H of the eleven-page contract is entitled “DISPUTE RESOLUTION PROCEDURE (WHICH INCLUDES JURY TRIAL WAIVER).” Section H, which is one-and-one-half pages long, contains three numbered provisions. Section H(l) sets out an “INITIAL GRIEVANCE PROCEDURE” and states that “[t]he parties agree to follow the Grievance procedures described in the Patient Rights Booklet for any claim, controversy, dispute or disagreement arising out of or in connection with the care rendered to Patient by Center and/or its employees.” Section H(2) is entitled “MEDIATION AT PATIENT’S REQUEST,” and it provides that the patient may request mediation of “any claim, controversy, dispute or disagreement arising out of or relating to ... this contract or breach thereof or any tort claim.” The mediation provision further provides that “[f]ailure by the Patient to request or pursue mediation prior to activation of the arbitration process shall terminate Patient’s right to mediation.”
Section H(3) of the contract is entitled “BINDING ARBITRATION.” This section of the contract provides, in pertinent part:
BINDING ARBITRATION: Any claim, controversy, dispute or disagreement initiated by either party prior to written notice of mediation, shall be resolved by binding arbitration administered by either the American Arbitration Association (AAA) or the American Health Lawyers Association (AHLA), as selected by the party requesting arbitration. In the event that the selected arbitration service is unwilling or unable to serve as arbitrator, the other named service shall *881 be utilized. The judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.
[[Image here]]
This agreement for binding arbitration shall be governed by and interpreted in accordance with the laws of the state where the Center is licensed....
BY AGREEING TO ARBITRATION OF ALL DISPUTES, BOTH PARTIES ARE WAIVING A JURY TRIAL FOR ALL CONTRACT, TORT, STATUTORY, AND OTHER CLAIMS.
Section H concludes with a separate signature box containing the following text:
I hereby agree to the arbitration provisions described above in Section H, including the use where applicable of the AAA Defined “Consumer-Related Disputes.” The provisions of Section H have been explained to me prior to my signature below and I also understand that I waive my right to trial by jury.
Following that text are signature lines for “Patient Signature” (left blank in this contract), “Legal Representative Signature” (signed by Daniel), “Additional Signature (if applicable)” (signed by Smith), and “Date” (written as “8/26/03”).
The last section of the contract, Section L (“ACKNOWLEDGEMENT” [sic]), is followed by a signature line for a representative of the nursing home and signature lines for the patient and “Other Persons Signing on Behalf of Patient.” The patient’s signature line on King’s contract was left blank, and Daniel and Smith signed on the two signature lines provided for “Other Persons Signing on Behalf of Patient.”
On February 10, 2005, Dorothy Owens (“the plaintiff”), as conservator of King, filed suit against National Health Corporation d/b/a NHC Healthcare, Murfreesboro; National Healthcorp, L.P.; National Health Realty, Inc.; NHC, Inc. a/k/a NHC, Inc.-Tennessee; and NHC/OP, L.P. (collectively, “the defendants”). The complaint alleges that King suffered injuries as the result of the acts or omissions of the defendants while a patient in the nursing home. The complaint asserts causes of action for negligence; gross negligence; wilful, wanton, reckless, malicious and/or intentional conduct; medical malpractice; and violations of the Tennessee Adult Protection Act, Tennessee Code Annotated sections 71-6-101 to -122. The complaint asks for an unspecified amount of compensatory and punitive damages and “demands a trial by jury on all issues herein set forth.”
On March 17, 2005, the defendants filed a motion to compel arbitration and stay proceedings. The defendants’ motion asked the trial court to compel arbitration based upon the terms of the nursing home contract signed by Daniel as King’s attorney-in-fact, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-316 (1999), Tennessee Code Annotated section 29-5-217 (2000), and the Tennessee Uniform Arbitration Act, Tennessee Code Annotated section 29-5-303 (2000).
Responding to the defendants’ motion to compel arbitration, the plaintiff asserted, in summary, that Daniel was not authorized by the power of attorney to enter into an arbitration agreement on King’s behalf; that the arbitration agreement cannot be enforced because the two identified arbitration organizations no longer perform this type of arbitration; that requiring Daniel, on behalf of King, to sign the arbitration agreement amounts to a breach of the defendants’ alleged fiduciary duty to King; that the arbitration agreement is unconscionable; and that the arbitration agreement violates federal law. In the *882 alternative, the plaintiff asserted that she should be permitted to conduct discovery-concerning the issues arising from the arbitration agreement.
The trial court denied the defendants’ motion to compel arbitration and stay the proceedings. The trial court concluded that the power of attorney does not authorize the attorneys-in-fact to make “legal decisions for Ms. King” and found “that the Durable Power of Attorney for Healthcare should not be so broadly construed as to be considered a Power of Attorney for legal care.”
The defendants filed a timely notice of appeal of the trial court’s ruling to the Court of Appeals. The defendants’ notice of appeal states that the matter is being appealed pursuant to Tennessee Code Annotated section 29-5-319.[2]
The Court of Appeals reversed the trial court’s ruling, concluding that the power of attorney authorized Daniel to make health care decisions on behalf of King and that the decision to admit King to a nursing home is a health care decision. The intermediate appellate court concluded that the arbitration provision of the nursing-home contract was merely part of the overall contract that Daniel was authorized to execute on behalf of King. The Court of Appeals also rejected the plaintiff’s various other arguments and remanded the case to the trial court with instructions to enter an order compelling arbitration.
We granted the plaintiffs application for permission to appeal. For the reasons stated below, we affirm in part and vacate in part the judgment of the Court of Appeals and remand the case to the trial court for further proceedings consistent with this opinion.
DISCUSSION
The plaintiff raises six issues for the Court’s review. Those six issues may be restated as follows: 1) whether this case is governed by the state or federal arbitration act; 2) whether King’s durable power of attorney for health care authorized her attorneys-in-fact to bind King to arbitration and to waive her right to trial by jury; 3) whether the arbitration agreement is enforceable even though a material term of the agreement is incapable of performance; 4) whether the arbitration agreement violates federal law; 5) whether pre-dispute arbitration agreements in nursing-home contracts violate public policy; and 6) assuming arguendo that the power of attorney authorizes Daniel to sign the arbitration agreement on behalf of King, whether the Court of Appeals erred in failing to remand the case for discovery regarding the plaintiffs assertions that the agreement is unenforceable on breach-of-fiduciary-duty and unconscionability grounds. The issues in this case are questions of law, which we review de novo without a presumption of correctness afforded to the trial court’s conclusions. See Union Carbide Corp. v. Huddleston, 854 S.W.2d 87, 91 (Tenn.1993). We will address each of these issues in turn.
A. Federal or State Law
The first question we must consider is whether this case is governed by the Federal Arbitration Act or the Tennessee Uniform Arbitration Act. The defen *883 dants argue that this case is governed by the federal act because the contract involves interstate commerce. See 9 U.S.C. § 2 (1999). Where the requisite connection with commerce is present, the federal act generally requires a court to stay the proceedings so the parties can resolve the dispute according to the terms of the arbitration agreement. See 9 U.S.C. § 3 (1999). The record contains an affidavit of a nursing-home administrator detailing the various ways in which interstate commerce is involved, e.g., the nursing home uses supplies and goods procured from outside Tennessee, admits residents of states other than Tennessee, and participates in the federally funded Medicare and Medicaid programs.
The plaintiff argues in response that even if interstate commerce is involved, the terms of the nursing-home contract provide that the arbitration agreement is to be governed by the Tennessee act. See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). Under Volt, parties to an arbitration agreement are at liberty to choose the terms under which they will arbitrate, and a contract that might ordinarily be governed by the federal act may provide that it will be governed by a particular state’s arbitration act. Id. at 479, 109 S.Ct. 1248.
We need not belabor our analysis on this point because Section H(3), the arbitration provision within the nursing-home contract, expressly provides that “this agreement for binding arbitration shall be governed by and interpreted in accordance with the laws of the state where the Center is licensed.” It is undisputed that NHC Healthcare, Murfreesboro is licensed in Tennessee. Therefore, that language does not merely provide that issues of substantive law are to be determined by reference to Tennessee law; it clearly provides that the arbitration agreement itself “shall be governed by and interpreted” in accordance with the laws of Tennessee. Applying Volt, we must conclude that this case is governed by the Tennessee Uniform Arbitration Act and not the Federal Arbitration Act.
B. Scope of Authority Granted To Attorneys-In-Fact
The question of whether the contract is governed by the state or federal arbitration act is not an academic one. The resolution of that question generally determines whether certain issues concerning the arbitration agreement are to be decided by an arbitrator or by a court. See Frizzell Constr. Co. v. Gatlinburg, L.L.C., 9 S.W.3d 79 (Tenn.1999). Because this arbitration agreement is to be interpreted in accordance with the Tennessee act, contract formation questions are to be decided by the court, not by an arbitrator. Id. at 85. Consequently, we next consider whether King’s power of attorney authorizes Daniel to sign an arbitration agreement on King’s behalf and to waive King’s right to trial by jury. The plaintiff argues that the decision to sign an arbitration agreement and to waive a jury trial is a legal decision, not a health care decision. Accordingly, she asserts that the power of attorney does not authorize Daniel to bind King to arbitration. We begin our analysis with an examination of the language of King’s power of attorney.
King’s power of attorney authorizes her attorneys-in-fact “to make health care decision [sic] for me if I am incapacitated or otherwise unable to make such decisions for myself’ and also grants her attorneys-in-fact “the power and authority to execute on my behalf any waiver, release or other document which may be necessary in order to implement the health care decisions that this instrument authorizes my Attorney- *884 in-Fact to assist me to make, or to make on my behalf.” Additionally, the power of attorney provides that it
is to be construed and interpreted as a Durable Power of Attorney for Health Care and is intended to comply in all respects with the provisions of Tennessee Code Annotated, § 34-6-201 et seq.; and all terms used in this instrument shall have the meanings set forth for such terms in the statute, unless otherwise specifically defined herein.
Tennessee Code Annotated section 34-6-201(2) (2001) defines “[Wealth care” to mean “any care, treatment, service or procedure to maintain, diagnose or treat an individual’s physical or mental condition, and includes medical care as defined in § 32-11-103(5).” Section 34-6-201 then defines “[Wealth care decision” to mean “consent, refusal of consent or withdrawal of consent to health care.” Tenn. Code Ann. § 34-6-201(3) (2001). Under these two statutory definitions, the decision to admit King to the nursing home clearly constitutes a “health care decision.”
Section 34-6-204(b) (2001) provides:
Subject to any limitations in the durable power of attorney for health care, the attorney in fact designated in such durable power of attorney may make health care decisions for the principal, before or after the death of the principal, to the same extent as the •principal could make health care decisions for such principal if the principal had the capacity to do so....
(emphasis added).
As stated in American Jurisprudence, “[p]owers of attorney are to be construed in accordance with the rules for the interpretation of written instruments generally; in accordance with the principles governing the law of agency, and, in the absence of proof to the contrary, in accordance with the prevailing laws relating to the act authorized.” 3 Am.Jur.2d Agency, § 27 (2007) (emphasis added) (footnotes omitted). In this case, King’s power of attorney must be construed in accordance with the foregoing provisions of the Tennessee Durable Power of Attorney for Health Care Act.
The phrase “to the same extent as the principal” as used in section 34-6-204(b) clearly indicates that, absent a limitation in the power of attorney, an attorney-in-fact can make exactly the same types of health care decisions that the principal could make if he or she had the mental capacity to do so. That statute, read in light of the statutory definitions mentioned above, leads to the conclusion that an attorney-in-fact acting pursuant to a durable power of attorney for health care may sign a nursing-home contract that contains an arbitration provision because this action is necessary to “consent ... to health care.” Tenn.Code Ann. § 34-6-201(3). Because King herself could have decided to sign the nursing-home contract containing the arbitration provision had she been capable, section 34-6-204(b) leads us to conclude that Daniel was authorized to sign the arbitration provision on King’s behalf. As a result, the plaintiffs argument that the power of attorney did not authorize Daniel to sign the arbitration agreement is without merit.
The plaintiffs argument on this issue is faulty in at least one other respect. Her purported distinction between making a legal decision and a health care decision fails to appreciate that signing a contract for health care services, even one without an arbitration provision, is itself a “legal decision.” The implication of the plaintiffs argument is that the attorney-in-fact may make one “legal decision,” contracting for health care services for the principal, but not another, agreeing in the contract to *885 binding arbitration. That result would be untenable. Each provision of a contract signed by an attorney-in-fact could be subject to question as to whether the provision constitutes an authorized “health care decision” or an unauthorized “legal decision.” Holding that an attorney-in-fact can make some “legal decisions” but not others would introduce an element of uncertainty into health care contracts signed by attorneys-in-fact that likely would have negative effects on their principals. Such a holding could make it more difficult to obtain health care services for the principal. And in some cases, an attorney-in-fact’s apparent lack of authority to sign an arbitration agreement on behalf of the principal presumably could result in the principal being unable to obtain needed health care services. For example, a mentally incapacitated principal could be caught in “legal limbo.” The principal would not have the capacity to enter into a contract, and the attorney-in-fact would not be authorized to do so. Such a result would defeat the very purpose of a durable power of attorney for health care.
Our holding on this issue is necessarily based upon both the language of King’s power of attorney and the provisions of the Tennessee Durable Power of Attorney for Health Care Act. Our holding, however, is consistent with cases from other jurisdictions considering the issue. See, e.g., Briarcliff Nursing Home, Inc. v. Turcotte, 894 So.2d 661 (Ala.2004); Hogan v. Country Villa Health Servs., 148 Cal.App.4th 259, 55 Cal.Rptr.3d 450, 453-55 (2007) (citing Garrison v. Superior Court of Los Angeles County, 132 Cal.App.4th 253, 33 Cal.Rptr.3d 350 (2005)); Sanford v. Castleton Health Care Ctr., L.L.C., 813 N.E.2d 411 (Ind.Ct.App.2004). But see Texas Cityview Care Ctr., L.P. v. Fryer, Nos. 2-06-373-CV, 2-06-426-CV, 2007 WL 1502088, *5 (Tex.App.-Fort Worth May 24, 2007) (stating “nothing in the medical power of attorney indicates that it was intended to confer authority on [the attorney-in-fact] to make legal, as opposed to health care, decisions for [the principal], such as whether to waive [the principal’s] right to a jury trial by agreeing to arbitration of any disputes”).
For the reasons stated above, we must reject the plaintiff’s argument that King’s power of attorney does not authorize Daniel to sign the arbitration agreement and thereby to waive King’s right to trial by jury. We hold that Daniel was authorized to sign the nursing-home contract, including its arbitration provision. This holding, however, does not resolve the plaintiffs other issues as to whether the arbitration agreement is enforceable.
C. Impossibility of Performance of a Material Term
The plaintiff asserts that the arbitration provision of the nursing-home contract is unenforceable because the two arbitration organizations mentioned in Section H(3), the American Arbitration Association and the American Health Lawyers Association, no longer conduct arbitrations in which the agreement to arbitrate predates the dispute which is the subject of the claim (“pre-dispute arbitration agreement”). The defendants apparently do not dispute the plaintiffs assertion that the two organizations no longer conduct arbitrations under the terms of pre-dispute arbitration agreements in health care cases. They argue, however, that both the federal and state arbitration acts provide for instances in which an arbitrator specified in the arbitration agreement is unavailable to conduct the arbitration. See 9 U.S.C. § 5 (1999); Tenn. Code Ann. § 29-5-304 (2000).
The Court of Appeals rejected the plaintiffs argument and agreed with the defen *886 dants’ position, citing Tennessee Code Annotated section 29-5-304. That section provides:
If the arbitration agreement provided a method of appointment of arbitrators, this method shall be followed. In the absence thereof, or if the agreed method fails or for any reason cannot be followed, or when an arbitrator appointed fails or is unable to act and a successor has not been duly appointed, the court on application of a party shall appoint one (1) or more arbitrators. An arbitrator so appointed has all the powers of one specifically named in the agreement.
As the Court of Appeals correctly concluded, section 29-5-304 provides for the very contingency illustrated by the facts of this case. When an agreed-upon arbitrator is unavailable, the court may appoint one or more arbitrators to conduct the arbitration.
The plaintiff asserts in this Court that the intermediate appellate court misconstrued her argument on this issue. Notwithstanding section 29-5-304, the plaintiff argues that the specification of the two arbitration organizations was such a material term of the contract that the contract itself must fail if neither of those organizations is available to conduct the arbitration.
The plaintiffs argument on this issue is without merit. First, there simply is no factual basis for the plaintiffs assertion that the specification of the two organizations was so material to the contract that it must fail if they are unavailable. Second, it appears that at least one of the two specified organizations mil conduct the arbitration if ordered by a court to do so. See AHLA Dispute Resolution Service Important Rules Amendment, American Health Lawyers Association, http://www. healthlawyers.org/Template.cfm?Section= About — Arbitration—and—Mediation— Services (follow hyperlink “Important Rules Amendment”) (last visited August 1, 2007) (stating, in footnote 2, “[i]f a judge gives a written order that the AHLA ADR Service administer an arbitration under the terms of a pre-injury arbitration agreement, signed by the parties, the AHLA ADR Service interprets the order as a de facto post-injury agreement to arbitrate the claim and thus will administer the matter.”); Owens v. Nexion Health at Gilmer, Inc., No. 2:06-CV-519-DF, 2007 WL 841114, *3 (E.D.Tex. Mar. 19, 2007) (“[T]he AHLA rules specifically provide that the AHLA Dispute Resolution Service will administer a consumer health care liability claim if ‘a judge orders that the Service administer an arbitration under the terms of a pre-injury arbitration agreement.’ Therefore, this Court may enforce the Arbitration Agreement as written.”). Thus, the plaintiffs argument is based upon the false factual premise that neither organization is available to conduct an arbitration in this case. It appears that the AHLA will conduct the arbitration if ordered by a court to do so.
For the foregoing reasons, the plaintiffs argument that the contract is void because a material term is incapable of performance is without merit.
D. Violation of Federal Law
The plaintiff argues that the arbitration agreement in the nursing-home contract violates federal law. Her argument is based upon both a federal statute and a federal regulation.
Section 1396r(c)(5)(A)(iii) of title 42 of the United States Code provides that a nursing facility that participates in the federal Medicaid program must,
in the case of an individual who is entitled to medical assistance for nursing facility services, not charge, solicit, accept, or receive, in addition to any *887 amount otherwise required to be paid under the State plan under this sub-chapter, any gift, money, donation, or other consideration as a precondition of admitting (or expediting the admission of) the individual to the facility or as a requirement for the individual’s continued stay in the facility.
42 U.S.C. § 1396r(c)(5)(A)(iii) (Supp.2007) (emphasis added). Similarly, section 483.12(d)(3) of title 42 of the Code of Federal Regulations provides:
In the case of a person eligible for Medicaid, a nursing facility must not charge, solicit, accept, or receive, in addition to any amount otherwise required to be paid under the State plan, any gift, money, donation, or other consideration as a precondition of admission, expedited admission or continued stay in the facility.
42 C.F.R. § 483.12(d)(3) (2006) (emphasis added).
The plaintiff argues that the waiver of a right to trial by jury constitutes a form of “other consideration” prohibited by the federal statute and regulation. The plaintiff therefore contends that it is illegal to require a patient to sign an arbitration agreement waiving the right to a jury trial as a precondition for being admitted to a nursing home.
Courts in several other jurisdictions have rejected this argument. In Owens v. Coosa Valley Health Care, Inc., 890 So.2d 983 (Ala.2004), the Alabama Supreme Court stated:
[Requiring a nursing-home admittee to sign an arbitration agreement is not charging an additional fee or other consideration as a requirement to admittance. Rather, an arbitration agreement sets a forum for future disputes; both parties are bound to it and both receive whatever benefits and detriments accompany the arbitral forum. If we were to agree with [the plaintiff], virtually any contract term [the plaintiff] decided she did not like could be construed as requiring “other consideration” in order to gain admittance to the nursing home and thus be disallowed by statute.
Id. at 989. See also Sanford, 813 N.E.2d at 419 (concluding that the general phrase “other consideration” within 42 U.S.C. § 1396r(c)(5)(A)(iii) did not include an agreement to arbitrate and that requiring a nursing-home admittee to agree to arbitrate did not violate the statute); Gainesville Health Care Ctr., Inc. v. Weston, 857 So.2d 278, 288 (Fla.Dist.Ct.App.2003) (“We have found no authority from any jurisdiction which holds that an arbitration provision constitutes ‘consideration’ in this sense; nor do we believe that the federal regulation was intended to apply to such a situation.”); Broughsville v. OHECC, L.L.C., No. 05CA008672, 2005 WL 3483777, *8 (Ohio Ct.App. Dec. 21, 2005) (stating that requiring a nursing-home ad-mittee receiving Medicare or Medicaid to agree to arbitrate is not charging an additional fee or other consideration).
Relying on Coosa Valley Health Care, Broughsville, and Sanford, the Court of Appeals concluded that requiring a nursing-home admittee to agree to arbitrate a dispute with the nursing home is not equivalent to charging an additional fee or other consideration. We agree with the intermediate appellate court’s analysis and hold that the arbitration agreement in King’s nursing-home contract did not violate either the federal statute or the federal regulation.
E. Pre-Dispute Arbitration Agreements in Nursing-Home Contracts and Public Policy
In Buraczynski v. Eyring, 919 S.W.2d 314 (Tenn.1996), we held that arbitration *888 agreements between physicians and patients are not per se invalid as a matter of public policy. The plaintiff in the pending case, however, asks us to hold that pre-dispute arbitration agreements in nursing-home contracts violate public policy. The plaintiff asserts that such a holding would not be inconsistent with Buraczynski because as we stated in that case:
[CJourts are reluctant to enforce arbitration agreements between patients and health care providers when the agreements are hidden within other types of contracts and do not afford the patients an opportunity to question the terms or purpose of the agreement. This is so particularly when the agreements require the patient to choose between forever waiving the right to a trial by jury or foregoing necessary medical treatment, and when the agreements give the healthcare provider an unequal advantage in the arbitration process itself.
Id. at 321. The plaintiff asserts that three of the foregoing factors stated in Buraczynski are implicated in every nursing-home contract containing an arbitration clause.
In arguing that pre-dispute arbitration agreements in nursing home contracts violate public policy, the plaintiff relies primarily upon the “Healthcare Due Process Protocol” adopted by the American Arbitration Association. See “Healthcare Due Process Protocol,” American Arbitration Association/American Bar Association/American Medical Association Commission on Healthcare Dispute Resolution, Final Report, July 27, 1998, available at http://www.adr.org'sp.asp?id=28633 (last visited August 1, 2007). In support of her argument on this issue, the plaintiff quotes several portions of the Due Process Protocol that state that binding forms of alternative dispute resolution (“ADR”) should be used only where the parties agree to do so after a dispute arises and that consent to use an ADR process should not be a requirement for receiving emergency care or treatment. The plaintiff goes on to assert that the admission of patients to nursing homes is analogous to “emergency care or treatment” and that consent to use arbitration therefore should not be a requirement for admission to a nursing home.
The Due Process Protocol relied upon by the plaintiff does not apply to nursing-home contracts. By its express terms, the Due Process Protocol applies only in the context of disputes arising between patients and their private managed-care plans. Due Process Protocol, Paragraphs I (“Introduction”) and II (“Summary of Recommendations”). Notwithstanding the limited scope of the Due Process Protocol, one could argue that one or more of the general principles stated in the Protocol might be equally applicable in health care settings other than the managed-care setting. None of those general principles, however, would support a holding that pre-dispute arbitration agreements in nursing-home contracts are per se invalid on public policy grounds. Such a holding would amount to a public-policy “exception” to the Tennessee Uniform Arbitration Act, a matter more properly within the purview of the General Assembly.
For the foregoing reasons, we reject the plaintiffs assertion that pre-dispute arbitration agreements in nursing-home contracts are per se invalid because they violate public policy.
F. Remand for Discovery
The trial court’s ruling that the power of attorney does not authorize Daniel to bind King to arbitration pretermitted the issue of whether the nursing-home contract is a contract of adhesion and, if *889 so, whether it is unenforceable on the ground that it is unconscionable. If this Court holds that the power of attorney authorized Daniel to sign the arbitration agreement, the plaintiff asserts that the Court of Appeals erred in not remanding the case to the trial court to permit the plaintiff to conduct discovery concerning this claim. She argues that the determination of uneonscionability is fact driven and that she should be permitted to develop the factual record before the court decides that issue. The plaintiff points out that the defendants have not yet responded to her previously filed discovery requests.[3]
A contract may be unconscionable if the provisions are so one-sided that the contracting party is denied an opportunity for a meaningful choice. Haun v. King, 690 S.W.2d 869, 872 (Tenn.Ct.App.1984) (quoting Brenner v. Little Red Sch. House, Ltd., 302 N.C. 207, 274 S.E.2d 206, 210 (1981)). In making that determination, a court must consider all the facts and circumstances of a particular case. Id. The scant factual record in this case does not disclose the circumstances under which Daniel signed the arbitration agreement on behalf of King, including whether the arbitration agreement was offered on a “take it or leave it basis.” Buraczynski, 919 S.W.2d at 320; see generally Howell v. NHC Healthcare-Fort Sanders, Inc., 109 S.W.3d 731 (Tenn.Ct.App.2003) (reviewing the trial court’s findings of fact and holding that an arbitration provision in a nursing-home contract was unconscionable and therefore unenforceable).
We are unable to resolve the question of whether the arbitration agreement is unconscionable due to the limited nature of the factual record. We therefore conclude that the case should be remanded to the trial court for further proceedings on that issue. The trial court, in its discretion, may allow the parties to conduct discovery.[4] See Berger v. Cantor Fitzgerald Sec., 942 F.Supp. 963, 966 (S.D.N.Y.1996) (allowing discovery concerning arbitration agreement and enforceability issues). We express no opinion, however, as to the ultimate resolution of the uneonscionability issue.
The plaintiff also asserts in her brief that she should be permitted to conduct discovery on the question of whether the agreement is unenforceable because it allegedly constitutes a breach of fiduciary duty. The Court of Appeals rejected the plaintiffs argument that the agreement is unenforceable under her breach-of-fiduciary-duty theory. We agree with the result reached by the intermediate appellate court on that issue, albeit on different grounds.
*890 As the plaintiff argues in her brief, the breach-of-fiduciary-duty claim is based upon her assertion that “in obtaining Ms. Daniel’s signature [on the arbitration agreement], Defendants breached fiduciary duties they owed to Mary King.” The plaintiffs argument is based upon the implied premise that the nursing home owed King a fiduciary duty prior to the time she, through Daniel, signed the contract for admission to the nursing home.
Assuming solely for the purpose of argument that a fiduciary duty might arise following a patient’s admission to a nursing home, the plaintiff has cited no authority for the finding that a fiduciary duty is owed to a potential patient of a nursing home. The record discloses no facts supporting a fiduciary relationship, contractual or otherwise, between King and the nursing home prior to the time King, through Daniel, signed the nursing-home contract. We therefore agree with the intermediate appellate court that the arbitration agreement is not unenforceable on the breach-of-fiduciary-duty ground asserted by the plaintiff. Given our holding that this issue is without merit, any discovery allowed by the trial court on remand should not include discovery on the breach-of-fiduciary-duty issue.
CONCLUSION
For the reasons stated above, we affirm the holdings of the Court of Appeals that the agreement is governed by the Tennessee Uniform Arbitration Act and that the power of attorney authorized Daniel to sign the arbitration agreement on behalf of King. We also affirm the intermediate appellate court’s holding that the arbitration agreement is not unenforceable on the ground that a material term of the agreement is incapable of performance. We likewise affirm the Court of Appeals’ holding that the arbitration agreement does not violate federal law. We further hold that a pre-dispute arbitration agreement in a nursing-home contract is not per se invalid as against public policy. In addition, we affirm the intermediate appellate court’s holding that the agreement is not unenforceable on the ground that requiring King to sign an arbitration agreement breached a purported fiduciary duty owed to King by the defendants. We vacate, however, the Court of Appeals’ judgment insofar as it holds that the arbitration agreement is not an unconscionable contract of adhesion, and we remand for further proceedings on that issue. In light of our remand for further proceedings on the unconscionability issue, we also vacate the intermediate appellate court’s instruction to the trial court to enter an order compelling arbitration.
The costs are taxed one-half to the plaintiff/appellant, Dorothy Owens, as Conservator for Mary Francis King, an incapacitated person, and one-half to the defendants/appellees, National Health Corporation d/b/a NHC Healthcare, Murfreesboro; National Healthcorp, L.P.; National Health Realty, Inc.; NHC, Inc. a/k/a NHC, Inc.-Tennessee; and NHC/ OP, L.P., for which execution may issue if necessary.

. It should be noted that a living will and a durable power of attorney for health care are two different legal instruments. A living will, prepared and executed pursuant to the Tennessee Right to Natural Death Act, sections 32-11-101 to -112 (2001 and Supp.2006), is “a written declaration ... stating declarant’s desires for medical care or noncare, including palliative care, and other related matters such as organ donation and body disposal.” Tenn. Code Ann. § 32-11-103(4) (2001). A living will, therefore, is a written statement of the *880 patient’s own health care decisions regarding his or her medical care in the event he or she has a terminal condition and becomes incompetent; in such circumstances, health care providers may rely upon the living will and implement the patient’s decisions set out in that instrument. By contrast, a durable power of attorney for health care, governed by Tennessee Code Annotated sections 34-6-201 to -218 (2001 and Supp.2006), is a document authorizing another person (an attorney-in-fact) to make health care decisions on behalf of the patient in the event he or she becomes incapacitated. Given their different purposes, a person may execute a living will, a durable power of attorney for health care, or both.

. Section 29-5-319(a)(1) states that an appeal may be taken from "[a]n order denying an application to compel arbitration made under § 29-5-303.” Tenn.Code Ann. § 29-5-319(a)(1) (2000). Section 29-5-319(b) further provides that "[t]he appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action.” Id. § 29-5-319(b) (2000). The federal act contains a comparable provision. See 9 U.S.C. § 16 (1999) ("Appeals”).

. Based upon our review of the record, it appears that the plaintiff served upon the defendants two sets of interrogatories and four sets of requests for production of documents while the case was pending in the trial court.

. The plaintiff also questions whether King was incompetent to sign the nursing-home agreement when Daniel executed the contract pursuant to the power of attorney. The plaintiff asserts that the trial court should have permitted discovery regarding the circumstances surrounding the execution of both the nursing-home contract and the power of attorney, which was executed only twenty-one days later. We agree that discovery concerning whether King was incompetent to sign the nursing-home agreement should be permitted on remand. Discovery should not be permitted, however, concerning the validity of the power of attorney or the circumstances surrounding its execution. See Tenn. Code Ann. § 34-6-208 (providing immunity to health care providers who rely on decisions "made by an attorney in fact who the health care provider believes in good faith is authorized” to make health care decisions).