IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 18, 2019 Session

## DONNA FELECIA WATSON v. QUINCE NURSING & REHABILITATION CENTER, LLC, ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-004192-17  Gina C. Higgins, Judge**

_____

### No. W2019-00261-COA-R3-CV

_____

This is an appeal from the trial court's denial of a motion to compel arbitration. The subject arbitration agreement was executed in connection with a patient's admission to a nursing home facility and signed by the patient's son. The trial court found that the son lacked authority to bind his mother to the agreement. For the following reasons, we reverse and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY W. ARMSTRONG, J., joined.

Craig C. Conley, Ormonde B. Landry, S. Keenan Carter, Brent E. Siler, and Kathryn Kinnison Van Namen, Memphis, Tennessee, and William Davis Frye, Ridgeland, Mississippi, for the appellant, Quince Nursing & Rehabilitation Center, LLC.[1]

Louis P. Chiozza, Jr., and Christopher W. Lewis, Memphis, Tennessee, for the appellee, Donna Felecia Watson.

Kevin Baskette, Memphis, Tennessee, for the appellee, Mukesh A. Jain, M.D.

---

[1] Quince was represented by Craig Conley and Ormonde Landry when its original brief was filed. Thereafter, notices of appearance were filed by four attorneys from a different firm, and Quince's reply brief lists only those four attorneys. However, from our review of the record, the original attorneys did not file a motion to withdraw. As such, we have listed all attorneys of record as of the date of this opinion.

# OPINION

## I. FACTS & PROCEDURAL HISTORY

Plaintiff, Donna Felecia Watson, instituted this wrongful death and health care liability suit on behalf of her deceased mother, Marzella Damper, and the heirs at law of of Marzella Damper. Plaintiff named as defendants Quince Nursing and Rehabilitation Center, LLC ("Quince"), and Dr. Mukesh A. Jain. The alleged negligence occurred while Ms. Damper was a patient at Quince.

Quince filed a motion to compel arbitration and stay the proceedings. Quince asserted that Ms. Damper's son, Marvin Damper, had executed an arbitration agreement when signing admission paperwork on her behalf. Thus, it asked the court to enforce the arbitration agreement and require the parties to participate in binding arbitration. Quince argued that the arbitration agreement was "valid and enforceable" and insisted that Marvin Damper was authorized to sign the agreement on his mother's behalf. It asked the court to consider matters outside the pleadings and submitted the arbitration agreement and a durable power of attorney for health care executed by Ms. Damper. Quince argued that the language of the arbitration agreement itself was sufficient to grant Marvin Damper authority to bind his mother. Alternatively, it submitted the durable power of attorney for health care, which was executed by Ms. Damper years earlier and named Marvin Damper and another daughter as Ms. Damper's joint attorneys in fact for health care.

Plaintiff filed a response in opposition to the motion to compel arbitration, arguing that the agreement was unenforceable because Marvin Damper did not have authority to bind his mother to the agreement. Plaintiff argued that the durable power of attorney for health care was only to become effective upon the incapacity of Ms. Damper, and in any event, it would only apply to "health care" decisions and not a voluntary arbitration agreement. She also asserted that the language in the arbitration agreement itself was insufficient to grant authority to Marvin Damper.

Quince filed a reply along with deposition testimony of Marvin Damper in a further effort to establish that he had actual or apparent authority to bind his mother to the arbitration agreement. During his deposition, Marvin Damper testified that Ms. Damper knew that he was signing the admission paperwork on her behalf and that she gave him "permission to sign everything on her behalf." Based on the entire record, Quince argued that the trial court should grant its motion to compel arbitration.

After a hearing, the trial court denied Quince's motion to compel, rejecting each of its arguments regarding the authority of Marvin Damper. First, the trial court found that no authority was established pursuant to the language used in the arbitration agreement itself. Next, it found that the durable power of attorney was not triggered because Ms.

Damper was not incompetent, and also, the arbitration agreement was a "non-healthcare issue." And finally, the trial court rejected the claim of actual or apparent authority based on the deposition testimony. Finding no evidence that Marvin Damper "handled Ms. Damper's healthcare business on a regular or routine basis and had permission to do so," the trial court concluded that Marvin Damper did not have authority to sign the arbitration agreement on her behalf. It found that Mr. Damper could bind himself to an arbitration agreement, but not his mother. In sum, the trial court concluded that Marvin Damper did not have authority to sign the arbitration agreement on behalf of his mother, and it denied the motion to compel arbitration. Quince timely filed a notice of appeal.

## II. ISSUES PRESENTED

Quince presents the following issues, which we have slightly restated, for review on appeal:

1.      Whether the trial court erred in deciding issues related to the enforceability of the arbitration agreement when the Federal Arbitration Act governs the Agreement and the parties agreed that an arbitrator would decide all questions regarding any dispute related to the agreement;

2.      Whether the trial court erred in finding that Marvin Damper did not have authority to sign the arbitration agreement on behalf of his mother when he testified that she expressly authorized him to do so;

3.      Whether the trial court erred in denying Quince's motion to compel arbitration when the arbitration agreement establishes that Marvin Damper had authority to sign the agreement on behalf of his mother; and

4.      Whether the trial court erred in finding that the power of attorney did not provide authority to sign the arbitration agreement.

In her posture as appellee, Plaintiff asks this Court to affirm the trial court's decision denying the motion to compel arbitration. The second named defendant, Dr. Jain, argues that if this Court reverses the trial court and compels arbitration, he should maintain his right to a jury trial because he was not a party to any arbitration agreement.

For the following reasons, we reverse the decision of the circuit court and remand for further proceedings.

## III. STANDARD OF REVIEW

"When the facts are not disputed, we review the denial of a motion to compel arbitration *de novo*, with no presumption of correctness in the trial court's decision."

- 3 -

*Berent v. CMH Homes, Inc.*, 466 S.W.3d 740, 745 (Tenn. 2015).

## IV. DISCUSSION

### A. *The Role of the Trial Court*

The first issue Quince raises on appeal is "[w]hether the trial court erred in deciding issues related to the enforceability of the Arbitration Agreement." Quince argues that the trial court "failed to recognize that the plain language of the Agreement states that the Federal Arbitration Act governs the Agreement and the parties agreed that an arbitrator would decide all questions regarding any dispute related to the Agreement."

The arbitration agreement stated that any disputes arising out of or in any way related to the agreement, including its "enforceability," would be submitted to arbitration. It also provided that the arbitrator would apply the law of the state where the facility was located, except that the Federal Arbitration Act, 9 U.S.C. §§ 1-16, would "exclusively govern the enforcement" of the arbitration agreement. In its brief on appeal, Quince argues that the trial court "declined to enforce" these provisions.

At the outset, we find nothing in the record to suggest that the trial court was asked to enforce this provision or that it declined to do so. In connection with its motion to compel arbitration, Quince asked the trial court to consider matters outside the pleadings, it submitted documents and deposition testimony for consideration, and it asked the trial court to find that Marvin Damper was authorized to execute the arbitration agreement on his mother's behalf. Quince never asked the trial court to refrain from deciding these matters so that they could be referred to arbitration. Because of its actions in the trial court, Quince cannot now argue, for the first time on appeal, that the trial court should not have decided the very issues on which Quince sought a ruling.

This Court has previously held that arguments regarding the applicability of the Federal Arbitration Act were waived by a party's failure to raise the issue in the trial court. *See Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 490 S.W.3d 800, 808 n.7 (Tenn. Ct. App. 2015) (explaining that issues raised for the first time on appeal are waived unless they question subject matter jurisdiction, and the court clearly had subject matter jurisdiction to consider a motion to compel arbitration irrespective of whether federal or Tennessee law determined the arbitration issue).

In another case, we acknowledged that a party would have had a right to have a certain matter decided by a judge, but we explained that the party waived that right by participating in arbitration and submitting that same issue to the arbitrator without objection. *Lee Warehouse Ltd. P'ship by Warehouses, Inc. v. Jepco Constr. Co.*, No. E1999-01944-COA-R3-CV, 2000 WL 760747, at *1 (Tenn. Ct. App. June 13, 2000). We said, "A party may not take his chances in arbitration and then, if dissatisfied with the

results, seek relief in the courts." *Id.* The converse holds true here. Quince cannot now complain that the trial court should not have decided the issue regarding Marvin Damper's authority when Quince asked the trial court to make that very determination.

In any event, though, even if this argument had been raised, the issue of authority is one to be decided by the court, not an arbitrator. This Court rejected the precise argument now raised by Quince in *Edwards v. Allenbrooke Nursing & Rehabilitation Center, LLC*, No. W2016-02553-COA-R3-CV, 2017 WL 4861658 (Tenn. Ct. App. Oct. 26, 2017). In that case, the defendant-nursing home argued that the trial court should not have decided whether an individual had authority to sign an arbitration agreement on behalf of a nursing home patient because the arbitration agreement stated that the FAA governed the enforceability of the agreement and that an arbitrator would decide issues regarding enforceability.[2] *Id.* at *1-2. As we explained in *Allenbrooke*, "[t]he trial court must resolve 'any issue questioning the formation of the parties' arbitration agreement.'" *Id.* at *4 (quoting *Clayton v. Davidson Contractors, LLC*, No. E2013-02296-COA-R3-CV, 2015 WL 1880973, at *6 (Tenn. Ct. App. Apr. 24, 2015)). One such "formation" issue to be decided by the court is "the signor's lack of authority to bind the principal." *Id.* "Compelling a party to arbitrate whether he actually agreed to arbitrate would be 'hopelessly circular.'" *Id.* (quoting *Clayton*, 2015 WL 1880973, at *8). For a more detailed discussion of the issue, we refer Quince to our discussion in *Allenbrooke*. Despite the arbitration agreement's provisions regarding the FAA and enforceability, Quince is not entitled to have the issue of authority decided by an arbitrator.[3]

## B. Authority of Marvin Damper

The next issue we address is whether the trial court erred in concluding that Marvin Damper lacked authority to sign the arbitration agreement on behalf of his mother. During his deposition, Marvin Damper testified that his mother knew that he was signing the admission paperwork on her behalf. He explained that his mother could not write because she "shook real bad" due to Parkinson's disease, so she gave him "permission to sign everything on her behalf."

"Unless limited by law or public policy, a principal 'may empower his or her agent to do the same acts, to make the same contracts, and to achieve the same legal consequences as the principal would be personally empowered to do.'" *Weaver v. Deverell*, No. W2011-00563-COA-R3-CV, 2011 WL 5069418, at *7 (Tenn. Ct. App.

___

[2] We note that Quince's current attorney also represented the defendant-nursing home in *Allenbrooke*, and the issue presented is copied almost verbatim from that appeal. Yet, Quince's current brief never cites or mentions *Allenbrooke*.

[3] "Tennessee law also contemplates judicial resolution of contract formation issues." *Allenbrooke*, 2017 WL 4861658, at *3 n.1 (citing *Frizzell Constr. Co. v. Gatlinburg, LLC*, 9 S.W.3d 79, 85 (Tenn. 1999)).

Oct. 26, 2011) (quoting *Tenn. Farmers Life Reassurance Co. v. Rose*, 239 S.W.3d 743, 749 (Tenn. 2007)). Under the law of agency, actual authority "'exists when the agent is expressly authorized by the principal to act or when the actual authority to act can be implied from the facts.'" *Id.* (quoting *Love v. Woods*, No. E2009-02385-COA-R3-CV, 2010 WL 4366072, at *6 (Tenn. Ct. App. Nov. 4, 2010)). On appeal, Plaintiff concedes that "Mr. Damper had express authority to execute the necessary admission documents based on his mother's knowledge and permission to sign the documents necessary to get her admitted to [Quince]." However, Plaintiff argues that Marvin Damper did not have authority to execute a stand-alone arbitration agreement that was not necessary for his mother's admission to the facility. According to Plaintiff, "[t]he only authority Mr. Damper had was express oral authority to sign documents required for admission and the arbitration agreement at issue was not required for admission or healthcare services."

Again, we find that the issue presented has already been considered by another panel of this Court. In *Necessary v. Life Care Centers of America, Inc.*, No. E2006-00453-COA-R3-CV, 2007 WL 3446636, at *1 (Tenn. Ct. App. Nov. 16, 2007), we considered the validity of an arbitration agreement executed by a wife while signing documents on her husband's behalf to have him admitted to a nursing facility. The wife "had her husband's oral express authority to sign all paperwork necessary for his admission to the facility." *Id.* Still, the wife argued that "this express authority did not include the power to enter into an arbitration agreement on her husband's behalf." *Id.* The wife admitted that she "had his authority to sign admitting documents so that he could get the required treatment" but said she never specifically asked him about submitting claims to arbitration or waiving his right to a jury trial. *Id.* at *3. The arbitration agreement she signed was a "stand-alone" document that was "voluntary" and "not a precondition to receiving medical treatment." *Id.* at *1-2. The trial court agreed with the wife and refused to enforce the arbitration agreement, but this Court vacated and remanded for further proceedings. *Id.*

On appeal, we noted that an analogous argument was rejected by the Tennessee Supreme Court in *Owens v. National Health Corporation*, 263 S.W.3d 876 (Tenn. 2007), when a plaintiff argued that a power of attorney authorized an attorney-in-fact to make healthcare decisions but not "legal" decisions like an arbitration agreement. The Supreme Court explained:

> The plaintiff's argument on this issue is faulty in at least one other respect. Her purported distinction between making a legal decision and a health care decision fails to appreciate that signing a contract for health care services, even one without an arbitration provision, is itself a "legal decision." The implication of the plaintiff's argument is that the attorney-in-fact may make one "legal decision," contracting for health care services for the principal, but not

- 6 -

another, agreeing in the contract to binding arbitration. That result would be untenable. Each provision of a contract signed by an attorney-in-fact could be subject to question as to whether the provision constitutes an authorized "health care decision" or an unauthorized "legal decision." Holding that an attorney-in-fact can make some "legal decisions" but not others would introduce an element of uncertainty into health care contracts signed by attorneys-in-fact that likely would have negative effects on their principals. Such a holding could make it more difficult to obtain health care services for the principal. And in some cases, an attorney-in-fact's apparent lack of authority to sign an arbitration agreement on behalf of the principal presumably could result in the principal being unable to obtain needed health care services. For example, a mentally incapacitated principal could be caught in "legal limbo." The principal would not have the capacity to enter into a contract, and the attorney-in-fact would not be authorized to do so. Such a result would defeat the very purpose of a durable power of attorney for health care.

*Id.* (quoting *Owens*, 263 S.W.3d at 885). In *Necessary*, this Court acknowledged that we were considering an express grant of authority rather than a written power of attorney, but we nevertheless found the "rationale and holding of *Owens*" dispositive of the appeal. *Id.* at *5. We explained that the wife was essentially arguing that "she had express authority from the Decedent, who was competent to give her that authority, to sign all of the admission documents and make all of the decisions regarding his admission to [the] facility--except one: she did not have his authority to sign an arbitration agreement, even though he did not withhold such authority." *Id.* Accepting such an argument would result in the type of untenable situation discussed in *Owens*. *Id.* As a result, we held that "Plaintiff, who had the Decedent's express authority to sign the admission documents at the healthcare facility, also had the authority to sign the arbitration agreement on the Decedent's behalf as one of those admission documents." *Id.*

We discern no reason to depart from the holding in *Necessary*.[4] Its reasoning was followed by this Court in *Bockelman v. GGNSC Gallatin Brandywood LLC*, No. M2014-

---

[4] Plaintiff asks this Court to follow the reasoning of *Farmer v. South Parkway Associates, L.P.*, No. W2012-02322-COA-R3-CV, 2013 WL 5424653 (Tenn. Ct. App. Sept. 25, 2013), rather than *Necessary*, claiming that *Farmer* is more "factually similar." We disagree because *Farmer* did not involve a grant of express actual authority. *See id.* at *5 ("Because the parties concede that no express actual authority to execute the document exists, we turn to the remaining agency theories to determine whether Massey had either implied actual authority or apparent authority to execute the arbitration agreement.")

- 7 -

02371-COA-R3-CV, 2015 WL 5564885, at *6 (Tenn. Ct. App. Sept. 18, 2015) *perm. app. denied* (Tenn. Jan. 20, 2016), when considering the scope of one's power as a health care agent. We explained that even though the arbitration agreement at issue was not required for admission, it was nevertheless "part of the admission process," and we declined to draw a distinction between a health care decision and a legal decision in the nursing home admission process. *Id.* This avoided "the 'untenable' result that agents can make some nursing home admission decisions for their principals, but not others." *Id.* (quoting *Owens*, 263 S.W.3d at 884-85).

Because Plaintiff concedes that "Mr. Damper had express authority to sign the 'admission paperwork,'" we conclude that Marvin Damper also had authority to execute the arbitration agreement that was presented in connection with the admission process. Thus, we reverse the trial court's order denying the motion to compel arbitration for lack of authority and remand for further proceedings consistent with this opinion.

### C.    Dr. Jain

Finally, we note that Dr. Jain raises an issue on appeal regarding whether he is entitled to a jury trial. As the trial court has not made any ruling regarding Dr. Jain for this Court to review, we decline to venture into the arguments he raises on appeal. This is an appeal from an order denying Quince's motion to compel arbitration of the claims Plaintiff asserted against it. Quince's motion did not specifically mention Dr. Jain, and the record before us does not contain any response to the motion filed by Dr. Jain. According to Dr. Jain's brief on appeal, he "did not take a position at the trial court level in opposition to or in favor of compelling arbitration between Quince . . . and the Plaintiff." Dr. Jain's attorney was present at the hearing in the trial court but stated that he had nothing to add to the discussion unless the trial judge granted the motion. When the trial judge orally ruled in favor of Plaintiff, Dr. Jain's counsel confirmed that he had nothing to say.[5]

Our holding on appeal is simply that Ms. Damper was bound by the arbitration agreement signed by her son on her behalf, and we reverse the trial court's holding to the contrary. The fact that Plaintiff has asserted related tort claims against a co-defendant does not affect the agreement between Plaintiff and Quince to arbitrate those claims against Quince. *See Dale Supply Co. v. York Int'l Corp.*, No. M2002-01408-COA-R3-CV, 2003 WL 22309461, at *8 (Tenn. Ct. App. Oct. 9, 2003). We decline to rule on any additional issues, raised for the first time on appeal, regarding Dr. Jain.

### V.   CONCLUSION

---

[5] Earlier in the hearing, counsel for Quince stated, "Dr. Jain is not a party to the arbitration agreement. Dr. Jain is not a party to any of the admissions documentation. That's all separate and apart. . . . This is a separate contract that was entered into between Mr. Damper and the Quince facility."

For the aforementioned reasons, the decision of the circuit court is hereby reversed and remanded for further proceedings consistent with this opinion. Specifically, we remand for entry of an order compelling arbitration of Plaintiff's claims against Quince, and the litigation with respect to Quince is stayed pending arbitration.[6] Costs of this appeal are taxed to the appellee, Donna Felecia Watson, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE

---

[6] Tennessee Code Annotated section 29-5-303(d) provides,

> Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this section or, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order for arbitration shall include such stay.