IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 18, 2008 Session

## LOVIE MITCHELL, as Executrix of the Estate of Mack Mitchell, Deceased v. KINDRED HEALTHCARE OPERATING, INC., ET AL.

Direct Appeal from the Circuit Court for Shelby County
No. CT-003280-06     D'Army Bailey,  Judge

_____

No. W2008-00378-COA-R3-CV - Filed November 19, 2008

_____

This appeal concerns the enforceability of an arbitration agreement between a nursing home and one of its patients.  Although the trial court found that the patient's spouse had authority to sign the agreement under the terms of a power of attorney, the court concluded that the spouse did not knowingly and voluntarily waive the patient's right to a jury trial.  Therefore, the trial court denied the defendant's motion to compel arbitration.   After reviewing the entire record, we find that the facts do not support the trial court's conclusion.  Accordingly, we reverse and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the of the Circuit Court Reversed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which Alan E. Highers, P.J., W.S. and David R. Farmer, J., joined.

David J. Ward, Chattanooga, TN,  for Appellant
T. Ryan Malone, Chattanooga, TN, for Appellant
Jill Jensen Thrash, Chattanooga, TN, for Appellant

Cameron C. Jehl, Nashville, TN, for Appellee
Deborah Truby Riordan, Nashville, TN, for Appellee
Carey L. Acerra, Nashville, TN, for Appellee
Brian G. Brooks, Greenbrier, AR, for Appellee

### OPINION

Factual Background

Mack Mitchell had a long history of medical problems. He had suffered several mini-strokes, and in 2004, was diagnosed with Alzheimer's disease. After another stroke in March, 2005, Mr. Mitchell was treated at Baptist Hospital in Collierville, Tennessee. Two weeks later, the hospital transferred him to Cordova Rehabilitation and Nursing Center ("Cordova"). The hospital chose Cordova for Mr. Mitchell because it was the only nursing facility with a bed available for Alzheimer's patients. Cordova admitted Mr. Mitchell on April 6th or 7th, 2005.

On April 8, 2005, Mr. Mitchell's wife, Lovie Mitchell, went to Cordova to visit him. When she arrived at Cordova, Ms. Mitchell was directed to Cordova's admissions counselor, Ron Lee. Mr. Mitchell was not competent to sign his own admissions papers, and Cordova needed Ms. Mitchell to sign them for him. Ms. Mitchell presented a power of attorney that gave her authority to make health care decisions for her husband. The power of attorney had been signed by Mr. Mitchell on July 22, 2004.

At the time of the meeting, Ms. Mitchell was also experiencing severe health problems. Since January 2004, she been undergoing chemotherapy treatment for Stage 3 cancer. She was also taking medication to treat depression, anxiety, fatigue, and chronic anemia. Side effects of this treatment included blurry vision and difficulty concentrating.

At the meeting, Mr. Lee gave Ms. Mitchell several documents related to her husband's admission to Cordova. One of these documents was the "Alternative Dispute Resolution Agreement Between Resident and Facility" (ADR Agreement"). Under the terms of the ADR Agreement, Mr. Mitchell agreed to submit any claims against the nursing facility to binding arbitration. The ADR Agreement was a stand-alone agreement, distinct from the general admissions agreement. The ADR Agreement stated that "the execution of this Agreement is not a precondition to the furnishing of services to the Resident by the Facility, and this Arbitration Agreement may be revoked by written notice to the Facility from the Resident within thirty (30) days of signature." Because of her condition, Ms. Mitchell asserts she could not read the agreement herself. Instead, Mr. Lee summarized its terms, and Ms. Mitchell signed it.[1]

Mr. Mitchell remained at Cordova until his death on July 13, 2005. On June 27, 2006, Ms. Mitchell, as executor of Mr. Mitchell's estate, filed a Complaint in the Circuit Court of Shelby County against the companies that owned and operated Cordova–Kindred Healthcare Operating, Inc., et al. ("Kindred"). The Complaint asserts several causes of action: negligence, gross negligence, willful, wanton, reckless, malicious and/or intentional conduct, medical malpractice, wrongful death, and violations of the Tennessee Adult Protection Act. In response, Kindred filed a motion asking the trial court to enforce the ADR Agreement. The parties conducted limited discovery regarding the execution of the ADR Agreement.

---

[1]The ADR Agreement shows Mr. Mitchell's signature, but Ms. Mitchell stated in her deposition that she signed her husband's name. The parties agree, and the trial court found, that it was Ms. Mitchell's signature.

On January 11, 2008, the trial court held a hearing on Kindred's motion. At the conclusion of the hearing, the trial court denied the motion. An Order incorporating the trial court's oral findings was filed January 18, 2008. At the hearing, the trial court made several findings of fact and conclusions of law:

> 1) Mr. Mitchell was incompetent on April 8, 2005, the day Ms. Mitchell signed the ADR Agreement.

> 2) The Durable Power of Attorney for Health Care gave Ms. Mitchell the authority to bind Mr. Mitchell to the terms of the ADR Agreement.

> 3) Ms. Mitchell, however, lacked the capacity to execute the ADR Agreement because she was experiencing harmful side effects (blurry vision and poor concentration) resulting from chemotherapy and other medical treatments.[2]

Kindred appeals and raises one issue for review: whether the trial court erred in failing to enforce the ADR Agreement signed by the parties. As Appellee, Ms. Mitchell raises three additional issues:

> 1)Whether the trial court erred in finding that the Durable Power of Attorney for Health Care was sufficient to give Ms. Mitchell authority to bind her husband to the ADR Agreement.

> 2) Whether, consistent with the trial court's findings, enforcement of the ADR Agreement is unconscionable.

> 3) Whether Ms. Mitchell knowingly and voluntarily agreed to the terms of the ADR Agreement.

## Standard of Review

On appeal, we review a grant or denial of a motion to compel arbitration under the same standards that apply to bench trials. *Spann v. Am. Express Travel Related Servs. Co.*, 224 S.W.3d 698, 706-07 (Tenn. Ct. App. 2006). Therefore, we will review the record *de novo* and will presume that the findings of fact are correct "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). We will review the trial court's resolution of legal issues without a presumption of correctness. *Johnson v. Johnson*, 37 S.W.3d 892, 894 (Tenn. 2001).

---

[2]Both parties assert that the trial court found the ADR Agreement void as against public policy. If the trial court had made this conclusion, it would have been incorrect. *See*, *Owens v. National Health Corp.*, 2007 WL 3284669 at *10-11 (Tenn. Nov. 8, 2007). Although the trial court's statements are imprecise, it appears to have found that Ms. Mitchell lacked the capacity to execute the agreement.

Law and Analysis

We first address whether Ms. Mitchell had the authority to execute the ADR agreement on behalf of Mr. Mitchell. Relying heavily on **Owens v. National Health Corp.**, No. M2005-01272-SC-R11-CV, 2007 WL 3284669 (Tenn. Nov. 8, 2007), the trial court found that the power of attorney for health care gave her such authority. We affirm the trial court's finding on this issue.

A power of attorney is a written instrument that creates a principal-agent relationship. The instrument itself indicates the purpose of the agency and the extent of the agent's powers. Therefore, "the language of a power of attorney determines the extent of the power that the power of attorney conveys, and the language should be construed using the same rules of construction generally applicable to contracts and other written instruments." **Cabany v. Mayfield Rehabilitation and Special Care Center**, No. M2006-00594-COA-R3-CV, 2007 WL 3445550, at *4 (Tenn. Ct. App. Nov. 15, 2007) (citing **Tenn. Farmers Life Reassurance Co. v. Rose**, 239 S.W.3d 743, 749 (Tenn. 2007). Therefore, we must look to the terms of the power of attorney:

> 1) I, Mack C. Mitchell...hereby appoint and authorize my wife, Lovie L. Mitchell,...as my agent and attorney-in-fact to act for me and in my name to make and communicate health care decisions for me as authorized in this document. For purposes of this document, "health care decision" shall mean consent, refusal of consent, or withdrawal of consent to any care, treatment, service or procedure to maintain, diagnose or treat any medical or physical condition.

> 2) By this document I intend to create a durable power of attorney for health care to the full extent allowed under the statutes of Tennessee. It is my intent that this durable power of attorney for health care shall be construed in accordance with the laws of the State of Tennessee. The authority of my agent and attorney-in-fact shall not terminate if I become disabled, incompetent or incapacitated.

> 3) Subject to any limitations in this document, in the event I at any time do not have the capacity to make informed health care decisions for myself, I hereby grant to my agent full power and authority to make health care decisions for me to the same extent that I could make such decisions for myself if I had the capacity to do so. In exercising this authority, my agent shall make health care decisions that are consistent with my desires as stated in this document or otherwise made known to my agent....

> 4)...I further delegate to my agent and attorney-in-fact the power and authority to select, employ, and discharge health care personnel, such as physicians, nurses, therapists, hospice care and home health care providers, and other medical professionals; to admit or discharge me (including transfer from another facility) from any hospital, hospice, nursing home, adult home or other medical care

-4-

facility...and to contract in my name and on my behalf for all health care services, including without limitation medical, nursing and hospital care, as my agent and attorney-in-fact may deem appropriate....

6) I authorize my agent and attorney-in-fact to execute on my behalf any documents necessary or desirable to implement the health care decisions that my agent and attorney-in-fact is authorized to make pursuant to this document, including...any waivers or releases from liability required by a physician or health care provider.

In *Owens,* the Tennessee Supreme Court addressed a situation in which a power of attorney for health care was used by the agent as authority to sign an arbitration agreement on behalf of the patient.[3] The arbitration agreement was a clause within a larger admissions agreement. The court found that "[b]ecause [the patient] could have decided to sign the nursing home contract containing the arbitration provision had [the patient] been capable, Tenn. Code Ann. § 34-6-204(b) leads us to conclude that [the attorney-in-fact] was authorized to sign the arbitration provision on [the patient's] behalf." *Id*. at *18. The court supported its conclusion with a policy rationale:

[The] purported distinction between making a legal decision and a health care decision fails to appreciate that signing a contract for health care services, even one without an arbitration provision, is itself a "legal decision." The implication of the plaintiff's argument is that the attorney-in-fact may make one "legal decision," contracting for health care services for the principal, but not another, agreeing in the contract to binding arbitration. That result would be untenable....Holding that an attorney-in-fact can make some "legal decisions" but not others would introduce an element of uncertainty into health care contracts signed by attorneys-in-fact that likely would have negative effects on their principals. Such a holding could make it more difficult to obtain health care services for the principal. And in some cases, an attorney-in-fact's apparent lack of authority to sign an arbitration agreement on behalf of the principal presumably could result in the principal being unable to obtain needed health care services.

*Id.* at *18-19.

In *Necessary v. Life Care Centers of America, Inc.*, No. E2006-00453-COA-R3-CV, 2007 WL 3446636 (Tenn. Ct. App. Nov. 16, 2007), this Court applied the rule established by *Owens*. In *Necessary*, the patient orally gave his wife express authority to sign all documents necessary for his admission to the nursing facility. *Id*. at *5. He did not explicitly grant her authority to waive his right to a jury trial. *Id*. The wife, however, when completing the admissions agreements, signed a stand-alone Arbitration Agreement. *Id*. at *1. Execution of that agreement was not a precondition

---

[3]Unlike the present case, the agreement in *Owens* was contained within a larger admissions agreement. Here, the ADR Agreement was a separate document.

for admission. ***Id***. Applying the rationale of ***Owens***, we held that the wife had authority to sign the agreement:

> Although the present case does not involve a written power of attorney, we think the rationale and holding of Owens is nevertheless dispositive of this appeal. In the present case, Plaintiff essentially argues that she had express authority from the Decedent...to sign all of the admission documents and make all of the decisions regarding his admission to Life Care's facility-except one: she did not have his authority to sign an arbitration agreement, even though he did not withhold such authority. Such a conclusion would result in the type of 'untenable' situation described in Owens.

***Id***. at *5; ***see also Jones v. Kindred Healthcare Operating, Inc.***, No. W2007-02568-COA-R3-CV, 2008 WL 3861980 (Tenn. Ct. App. Aug. 20, 2008) (finding that a power of attorney can authorize the attorney-in-fact to enter into an arbitration agreement on behalf of the principal); ***Raines v. National Healthcare Corp.***, No. M2006-1280-COA-R3-CV, 2007 WL 4322063 (Tenn. Ct. App. Dec. 6, 2007) (recognizing that a power of attorney covering health care decisions does authorize the attorney-in-fact to waive the principal's right to a jury trial); ***Cabany,*** 2007 WL 344550, at *4 (recognizing that signing an arbitration agreement as a part of a nursing home admissions agreement is a legal, not a medical, decision).

Here, the power of attorney gave Ms. Mitchell authority to make certain decisions for Mr. Mitchell in the event that he became incapacitated. Both parties agree that Mr. Mitchell was incompetent; therefore, Ms. Mitchell's authority under the power of attorney was triggered. Under the power of attorney, Ms. Mitchell had authority to act as attorney-in-fact "to the same extent" as Mr. Mitchell and to the "full extent allowed under the statutes of the state of Tennessee." Furthermore, this particular power of attorney permits Ms. Mitchell to execute "waivers" on behalf of Mr. Mitchell. Applying the rules of ***Owens*** and its progeny, we find that Ms. Mitchell had authority as attorney-in-fact to make the legal decision to execute the ADR Agreement.

Unconscionability

We now address the issue of unconscionability. Although Ms. Mitchell raised this defense at the trial, the court did not address this issue–presumably because it found that Ms. Mitchell lacked capacity. Reviewing courts often remand for discovery on the issue of unconscionability because it requires an "intensely fact-driven inquiry." ***Hill v. NHC Healthcare/Nashville, LLC***, No. M2005-01818-COA-R3-CV, 2008 WL 1901198, at *6 (Tenn. Ct. App. Apr. 30, 2008). ***See also***, ***Owens***, 2007 WL 3284669, at *11; ***Raines v. National Health Corp.***, No. M2006-1280-COA-R3-CV, 2007 WL 4322063, at *7-8 (Tenn. Ct. App. Dec. 6, 2007). In the present case, however, the parties have conducted discovery on this issue, and the factual record is sufficiently developed for our review. ***See Reagan v. Kindred Healthcare Operating, Inc.***, No. M2006-02191-COA-R3-CV, 2007 WL 4523092 (Tenn. Ct. App. Dec. 20, 2007) (addressing the unconscionability of an arbitration

agreement when the trial court made no findings of fact or conclusions of law). Whether a particular contract is unconscionable is a question of law. *Taylor v. Butler*, 142 S.W.3d 277, 284-85 (Tenn. 2004).

There are two types of unconscionability: procedural and substantive. Procedural unconscionability "may arise from a lack of a meaningful choice on the part of one party." *Trinity Industries, Inc. V. McKinnon Bridge Co., Inc.*, 77 S.W.3d 159, 170 (Tenn. Ct. App. 2001). A contract is substantively unconscionable when its "terms are unreasonably harsh." *Id*. Tennessee courts, however, blend the two types and find unconscionability when "the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other." *Id.* at 171 (*quoting Haun v. King*, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984). When deciding whether a contract is unconscionable, a court considers the contract's "setting, purpose, and effect," and analyzes factors such as "weaknesses in the contracting process like those involved in more specific rules as to contractual capacity, fraud, and other invalidating causes...." *Taylor*, 142 S.W.3d at 285 (quoting Restatement (Second) of Contract § 208, cmt. a (1981)).

Courts are more likely to find that contracts of adhesion are unconscionable. A "contract of adhesion" is "a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996) (*quoting* Black's Law Dictionary 40 (6th ed. 1990)). If an agreement is a contract of adhesion, then the "defendant seeking enforcement...must prove that the parties 'actually bargained over the arbitration provision or that it was a reasonable term under the circumstances.'" *Howell v. NHC Healthcare-Fort Sanders, Inc.*, 109 S.W.3d 731, 734 (Tenn. Ct. App. 2003) (*quoting Brown v. Karemor International, Inc.*, No. 01A01-9807-CH-00368, 1999 WL 221799 (Tenn. Ct. App. Apr. 19, 1999)). If the agreement is not a contract of adhesion, the party seeking to avoid enforcement of the contract must prove unconscionability like any other defense of contract law. *Diagnostic Ctr. v. Steven B. Stubblefield, M.C., P.C.*, 215 S.W.3d 843, 847 (Tenn. Ct. App. 2006).

In *Reagan v. Kindred Healthcare Operating, Inc.*, No. M2006-02191-COA-R3-CV, 2007 WL 4523092 (Tenn. Ct. App. Dec. 20, 2007), the court examined the exact agreement at issue here and found that it was not a contract of adhesion. *Id*. at \*15. The ADR Agreement is a separate, stand-alone document; it is not buried inside a larger admissions agreement. It clearly provides that execution of the agreement is "not a precondition to the furnishing of services." It states that the patient has the right to seek legal counsel and that it can be revoked within thirty days of execution. The first page of the Agreement states, in bold print, "[b]inding arbitration means that the parties are waiving their right to a trial, including their right to a jury trial, their right to a trial by a Judge and their right to appeal the decision of the arbitrator(s)." Moreover, Ms. Mitchell did not have to execute the agreement for Mr. Mitchell to continue receiving care. In fact, when Ms. Mitchell signed the agreement, Mr. Mitchell had already been admitted and was receiving care.

Even if this agreement is not a contract of adhesion, Ms. Mitchell asserts that the circumstances surrounding the execution of the ADR Agreement render it unconscionable. Because of her medical problems, Ms. Mitchell asserts that she did not read the agreement; however, even if she had read it, she contends that she would not have understood it. Ms. Mitchell admits that she did not tell Mr. Lee about her condition, but instead she relied on him to explain the agreement's terms to her. Here, the memories of both parties become fuzzy. While Ms. Mitchell cannot remember most of Mr. Lee's explanation, she claims that he did not tell her that she was waiving the right to a jury trial. She cannot remember if he explained the arbitration process or if he told her that the agreement was optional. Likewise, Mr. Lee cannot remember the meeting, but asserts that he routinely explained to other patients that execution of the agreement meant waiving the right to a jury trial.

We cannot find that these circumstances support a finding of unconscionability. Ms. Mitchell's ailments are undoubtedly genuine and painful, but she did not present any evidence, other than her own testimony, that her condition rendered her unable to understand the agreement she executed. Her poor memory may very well be a product of her medical condition, but it is not a sufficient reason to find this agreement unconscionable. Furthermore, Ms. Mitchell relies heavily on Mr. Lee's inability, at his deposition, to describe the arbitration process in much detail. However, she does not present any evidence that Mr. Lee's description of the agreement or the arbitration process during their meeting was inadequate or incorrect. Finally, there is nothing in the record suggesting that Ms. Mitchell was coerced into signing the ADR Agreement, or that she was denied an opportunity to make a meaningful choice.

Ms. Mitchell also argues that the terms of the ADR Agreeement were unreasonably harsh, and therefore unconscionable. In *Reagan*, this court determined that this exact agreement contained "no unfair advantage." *Id*. at *15. The court based its conclusion on the clarity of the agreement's terms. Specifically, the agreement "did not change the defendant's duty to use reasonable care in treating [the patient], nor limit liability for breach of that duty, but merely shifted disputes to a different forum." *Id*. Ms. Mitchell argues that *Reagan* is inapplicable because the plaintiff in that case did not argue that the agreement was substantively unconscionable. As previously recognized, Tennessee courts do not strictly adhere to the procedural/substantive dichotomy when conducting an unconscionability analysis. Accordingly, in *Reagan*, the court analyzed the terms of the agreement and found them to be enforceable. *Id*. Following *Reagan* on this point, we find that the terms of the ADR Agreement are not unreasonable harsh or unconscionable.

Although Ms. Mitchell presents a number of facts supporting her unconscionability defense, those facts, in light of the entire record, are insufficient. Having considered the facts and circumstances presented in the record, we conclude that the ADR Agreement is not unconscionable.

Mental Capacity

Finally, Ms. Mitchell argues that she did not knowingly and voluntarily waive the right to a jury trial when signing the ADR Agreement. Specifically, she contends that she did not have the

mental capacity to execute the agreement. The degree of mental capacity required to enter into a contract is a question of law. ***Rawlings v. John Hancock Mut. Life Ins. Co.***, 78 S.W.3d 291, 297 (Tenn. Ct. App. 2001). Therefore, our review of the trial court's finding on this issue is ***de novo***.

An adult is presumed competent, and the party attempting to invalidate a contract based on the theory of mental incapacity bears the "burden of proving that one or both of the contracting parties were mentally incompetent when the contract was formed." ***Id***. (citing ***Knight v. Lancaster***, 988 S.W.2d 172, 177-78 (Tenn. Ct. App. 1998). Specifically, persons seeking to show incapacity must prove either "(1) they are unable to understand in a reasonable manner the nature and consequences of the transaction or (2) they are unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of their condition." ***Id***. "It is not enough to prove that a person was depressed or had senile dementia; [rather], to prove mental incapacity, the person with the burden of proof must establish, in light of all the surrounding facts and circumstances, that the cognitive impairment or disease rendered the contracting party incompetent...." ***Id***.

The subject record does not demonstrate that Mr. Lee had any reason to know of Ms. Mitchell's medical condition. She did not inform him of her condition. Furthermore, the record does not reveal anything about Ms. Mitchell's condition on the day she executed the ADR Agreement. In ***Reagan***, the plaintiff presented evidence from doctors and medical charts indicating that certain medications would cause confusion and impairment. ***Reagan***, 2007 WL 4523092, at *17. The court found, in spite of this evidence, that the plaintiff had the capacity to execute the contract. ***Id.*** Here, Ms. Mitchell did not present any evidence, other than her own testimony, about her condition. Moreover, her testimony is riddled with contradictions and memory lapses. Therefore, we find that Ms. Mitchell has not met her burden of demonstrating that she was incompetent at the time she signed the ADR Agreement.

Conclusion

For the foregoing reasons, we reverse the decision of the trial court and remand for the entry of an order compelling arbitration. Costs of this appeal are taxed to the Appellee, Lovie Mitchell, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, J.