IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 24, 2016 Session

## PENNY ARVIDSON RICHARDS v. NEIL KINGSLAND RICHARDS

**Appeal from the Chancery Court for Sullivan County**
**No. K0038722(B)      R. Jerry Beck, Judge[1]**

_____

### No. E2015-00758-COA-R3-CV-FILED-SEPTEMBER 26, 2016

_____

In this divorce action, Penny Arvidson Richards (Wife) argues that the trial court's judgment granting her a divorce and incorporating the parties' marital dissolution agreement (MDA) should be set aside. Among other things, Wife alleges that she signed the MDA under duress and/or while she lacked the requisite mental capacity to do so. The trial court ruled that Wife failed to prove her defenses to the enforcement of the MDA. Wife appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KENNY ARMSTRONG, JJ., joined.

Sarah E. Larkin,[2] Johnson City, Tennessee, for the appellant, Penny Arvidson Richards.

R. Wayne Culbertson, Kingsport, Tennessee, for the appellee, Neil Kingsland Richards.

### OPINION

### I.

Wife filed her complaint for divorce on February 4, 2013. On May 13, 2013, her first attorney, Shelburne Ferguson, Jr., filed a motion to withdraw. The trial court granted that motion on May 24, 2013. A trial date of November 7, 2013 was set by order

---

[1] Sitting by interchange.

[2] Attorney Sarah E. Larkin filed a motion to withdraw as Wife's counsel after filing a brief and reply brief and orally arguing on Wife's behalf. We granted her motion on August 18, 2016. Apparently, Wife is now proceeding pro se.

entered September 6, 2013.  On October 28, 2013, Wife filed a motion for continuance, citing the death of her second attorney, Michael LaGuardia.  The trial court granted the motion over the objection of Neil Kingsland Richards (Husband).  The case was reset.  The new trial date was set for January 9, 2014.

On January 10, 2014, Wife filed another motion to continue, alleging that her "medical condition, multiple sclerosis, has worsened drastically," that "discovery still has not been completed," and "the parties have not been to mediation."  The trial court granted the continuance over Husband's objection, and again reset the case for trial, this time to April 2, 2014.  On March 26, 2014, Wife filed her third motion to continue, again citing her medical condition.  On April 1, 2014, the trial court granted the motion of attorney Gregory W. Francisco to withdraw as Wife's counsel.  On April 30, 2014, the trial court granted the motion of Jerrold L. Becker, Wife's fourth attorney, to withdraw as her counsel.  On June 9, 2014, the trial court entered an order stating, "after numerous counsel being involved, the number of continuances and other issues that this matter will remain on the docket and the same will be tried on July 2, 2014."

On June 27, 2014, Wife, then represented by Thomas C. Jessee, again moved for a continuance, arguing that her new attorney had just been retained and "will not have adequate time to prepare for trial."  On July 17, 2014, the trial court entered an order stating,

> Based on argument of counsel the Court finds it is appropriate to continue this matter, Mr. Jessee having just been retained last week.
>
> The parties in consultation with the Court agreed the trial would be held on August 5, 2014 at 9:00 AM in Bristol.  It is the Court's intention to try that case on that date.  Because of the age of the case no continuances will be granted for any reason other than severe illness.  [Wife] is admonished not to discharge her attorney unless she is prepared to try the case herself on August 5, 2014.

On August 12, 2014, the trial court ordered the parties to mediation and set a trial date of September 4, 2014.  The mediation occurred on September 4, 2014.  The parties reached an agreement at mediation.  They signed the MDA, which consists of two handwritten pages and two attachments listing and valuing the parties' property.  The MDA provides that Husband will pay non-modifiable alimony to Wife in the amount of $1,000 per month for 48 months.  Attachment II to the MDA values the marital assets awarded to Husband at $550,091.27, and those to Wife at $507,983.21.

Wife mailed a pro se, ex parte letter on October 29, 2014, to the trial court. Her letter is captioned "letter of protest at lack of advocacy and preparation." In it, she listed numerous grievances regarding the litigation and her representation, among other things. Wife's letter states, "my attorney . . . prepared NO documents on my behalf prior to mediation and the[n] FORCED ME TO SIGN an untenable agreement blocking my path when I asked to be excused from the mediation session." (Capitalization in original.) Shortly thereafter, the trial court granted Wife another continuance in an order stating the following:

> [Husband] filed a motion to enforce the mediated agreement between the parties. The matter was set for October 31, 2014 at 9:00 A.M. Counsel for [Wife] has requested a short continuance while [counsel] continues to work through issues concerning the settlement. [Husband's] counsel strenuously objects to any continuance.
>
> Based on the argument of counsel,
>
> IT IS HEREBY ORDERED this matter is continued until Wednesday, November 5, 2014[.]

At the beginning of the November 5, 2014 hearing, Wife's counsel orally moved for a continuance on the ground that Wife was at a doctor's office for an appointment and unable to be present at court. Wife presented no doctor's report or other communication about her medical condition, and her attorney stated that Wife had simply texted him to tell him she couldn't be present because of the doctor's appointment. The trial court painstakingly reviewed the procedural history of the case, and stated as follows:

> Now, this has been an unusual case for this Court to hear. I don't think I've had anything near this chain of circumstances we've experienced in this case but I am convinced beyond – I think in this case beyond a preponderance but up to a clear and convincing proof that the wife, Mrs. Richards, has done about everything she can do to delay the end of this case[.]
>
> *  *  *
>
> Now, I recognize she's ill. I learned that early on in these proceedings, but I – I previously set a drop dead date in this case and I think she would have full understanding of what

3

that meant, it's going to go to trial, which I relented and didn't force that to a[n] issue in a – when a prior – another lawyer was involved in the case other than Mr. Jessee. And it seems strange to the Court that Mrs. Richards, the wife, knowing of the problems with this case would go all the way to Nashville without obtaining some type of medical report.

Following the trial court's comment, the case proceeded forward the same day.

It is clear from the transcript that the trial court took seriously the allegations in Wife's ex parte letter. The court expressed concern that the crime of false imprisonment might have been committed by Wife's attorney during the mediation. On its own accord, the trial court called and briefly examined the mediator, Douglas S. Tweed. Mr. Tweed said that he did not witness any conduct by attorney Jessee that he would "determine to be a false imprisonment or a forced remainder" as alleged in Wife's letter.[3]

Husband moved to withdraw his counterclaim and stipulated that Wife was entitled to a divorce on the ground of inappropriate marital conduct. The court reviewed and approved the MDA. The judgment, entered December 5, 2014, grants Wife a divorce based on Husband's inappropriate marital conduct and incorporates the MDA.

Wife moved to alter or amend the judgment, arguing, among other things, that

> [t]he plaintiff would show that given her current medical and mental condition she became so distraught during the mediation that she felt threatened and did not have a clear understanding of the terms of the [MDA]. She believes there was undue pressure for her to execute the agreement which was not in her best interest and she believes that her medical condition was worse than she realized during the time period

---

[3] Attorney Jessee also stated to the court,

> In front of everyone I asked [Wife] to please not leave until we – we were circulating the agreement. She said she needed to leave to let a contractor in. From my observation she could have walked out and left. I didn't physically keep her or block her from going. She waited and – and signed the agreement.

Because this statement was made by Mr. Jessee as an officer of the court, and not under oath, the trial court said that it would not consider it in deciding any issue which might have otherwise been impacted by it.

and that she was not physically or mentally capable of executing such an important agreement.

In early February 2015, the trial court entered a consent order substituting Wife's sixth attorney, Jason A. Creech, for Mr. Jessee. Around the same time, Wife moved for a continuance of the hearing on her motion to alter or amend, saying her counsel "cannot be prepared and ready for trial on such short notice." A hearing took place on February 4, 2015. Wife testified that, on the day she went to mediation and signed the MDA, "I was suffering from a lack of being able to make clear judgment calls." She further stated that Husband had threatened her with "information regarding pornographic materials that he was going to use and post against me," and that her then-attorney, Jessee, pressured her and refused to allow her to leave until she signed the MDA. The parties presented proof regarding several marital assets that were not specifically addressed by the MDA – a retirement pension from Husband's former employer, two such pensions from Wife's former employment, and savings bonds in the amount of approximately $3,200. The trial court ruled that each party would receive 50% of the value of these assets. The court also reviewed the MDA. It reiterated its finding that the terms were fair and equitable. Regarding Wife's defenses to the enforcement of the MDA, *i.e.*, duress and mental capacity, the trial court specifically found Wife not credible, and credited the testimony of Husband. The trial court denied Wife's motion to alter or amend the divorce judgment. Wife timely filed a notice of appeal.

## II.

Wife raises the following issues on appeal:

> 1. Whether the divorce and property settlement should be set aside because the trial court granted the divorce on the ground of inappropriate marital conduct without hearing proof of the facts alleged in support of this ground.
>
> 2. Whether the trial court erred in ruling that Wife did not establish that she signed the MDA under duress or without the requisite mental capacity.
>
> 3. Whether the MDA should be set aside because it does not make adequate and sufficient provision for the equitable settlement of property rights between the parties.
>
> 4. Whether the trial court's refusal to grant continuances prior to the November 5, 2014, and February 4, 2015, hearings was

an abuse of discretion requiring the divorce judgment to be set aside.

## III.

Our review of this non-jury case is de novo upon the record of the proceedings below with a presumption of correctness as to the trial court's factual findings, a presumption we must honor unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d). "When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings." *Collins v. Howmet Corp.*, 970 S.W.2d 941, 943 (Tenn. 1998) (citation omitted). We review the trial court's conclusions of law de novo with no presumption of correctness. *Oakes v. Oakes*, 235 S.W.3d 152, 156 (Tenn. Ct. App. 2007) (citation omitted).

## IV.

### A.

Wife argues that the trial court erred in granting her a divorce based on Husband's inappropriate marital conduct without hearing proof pertaining to that ground, citing Tenn. Code Ann. § 36-4-114 (2014), which provides:

> If the defendant admits the facts charged in the . . . petition and relied upon as the ground for a divorce, . . . the court shall, nevertheless, before decreeing a divorce, except a divorce on the ground of irreconcilable differences, hear proof of the facts alleged as aforementioned, and either dismiss the . . . petition or grant a divorce, as the justice of the case may require.

Wife relies upon a pair of cases where this Court vacated a divorce judgment because the trial court did not follow this statute. *Stutz v. Stutz*, No. E2004-01399-COA-R3-CV, 2005 WL 2016828 (Tenn. Ct. App., filed Aug. 23, 2005); *Hyneman v. Hyneman*, 152 S.W.3d 549 (Tenn. Ct. App. 2003). In both opinions, however, we indicated that a trial court may grant a divorce upon *stipulated* grounds without hearing proof. *Stutz*, 2005 WL 2016828, at *1 ("the trial court erred in granting a divorce to the parties in the absence of a stipulation to or proof of grounds for divorce"); *Hyneman*, 152 S.W.3d at 550 ("absent a mutual stipulation agreed upon by the parties, pursuant to Tennessee Code Annotated §§ 36-4-114 and 36-4-129, the trial court must conduct a hearing prior to

6

entering a final decree of divorce"). This rule is in accordance with Tenn. Code Ann. § 36-4-129, which provides that

> (a) In all actions for divorce from the bonds of matrimony or legal separation the parties may stipulate as to grounds and/or defenses.
>
> (b) The court may, upon stipulation to or proof of any ground of divorce pursuant to § 36-4-101, grant a divorce to the party who was less at fault or, if either or both parties are entitled to a divorce or if a divorce is to be granted on the grounds of irreconcilable differences, declare the parties to be divorced, rather than awarding a divorce to either party alone.

Wife argues that there was no stipulation in this case. The transcript of the divorce hearing belies this argument:

> [Husband's counsel]: Yes, Your Honor, he moves to withdraw his counterclaim and stipulates that [Wife] is entitled to divorce under the statutory ground of inappropriate marital conduct and that she should be granted the divorce.
>
> The Court: I want to make some more findings. Now, when Mr. Jessee – I'm asking this as a question of the attorneys. Would he have a right to cross examine Mr. Richards, the husband?
>
> [Husband's counsel]: He has a right to, Judge, but . . . he's admitting he's at fault. I mean, what else could we . . .
>
> The Court: Would you have any questions of Mr. Richards, the husband?
>
> [Wife's counsel]: Would I? Well, I – I – he's – he's admitted to – entitled to a divorce. If we're taking up the order of protection and – and/or restraining order I have . . .
>
> The Court: I'm not going to hear the order of protection. I'll make a further finding on that later.

7

[Wife's counsel]: *If he's stipulated she's entitled to an inappropriate marital conduct then I don't know that I'd have any additional questions about it.*

(Emphasis added.) The trial court later stated, without objection, that "I award the divorce to the wife on grounds of inappropriate marital conduct and on stipulation of [Husband]." As can be seen from the transcript, the trial court gave Wife's counsel the opportunity to present proof, and counsel declined, recognizing the stipulation to inappropriate marital conduct. The trial court did not err in granting Wife a divorce on the ground of inappropriate marital conduct.

**B.**

Wife argues that the trial court erred in finding that she did not establish duress or lack of mental capacity as a defense to the enforcement of the MDA. The Supreme Court addressed a similar contention in **Barnes v. Barnes**, 193 S.W.3d 495, 498-500 (Tenn. 2006), and provided the following guidance:

> We have previously held that a marital dissolution agreement is a contract and as such generally is subject to the rules governing construction of contracts. . . . These types of agreements consistently have been found to be valid and enforceable contracts between the parties.
>
> Additionally, settlement agreements made during or in contemplation of litigation are enforceable as contracts.
>
> \*      \*      \*
>
> Husband . . . alleged that he was under duress at the time he signed the agreement because Wife threatened to remove the children from this state. . . .
>
> Duress is defined as " 'a condition of mind produced by the improper external pressure or influence that practically destroys the free agency of a party, and causes him to do and act or make a contract not of his own volition, but under such wrongful external pressure.' " **Rainey v. Rainey**, 795 S.W.2d 139, 147 (Tenn. Ct. App. 1990) (quoting **Simpson v. Harper**, 21 Tenn. App. 431, 111 S.W.2d 882, 886 (1937)). When such pressure exists "is a question to be determined by the

8

age, sex, intelligence, experience and force of will of the party, the nature of the act, and all the attendant facts and circumstances." *Id*. (quoting 10 Tenn. Jur. *Duress and Undue Influence* § 3 at 112 (1983)).

(Internal citations and quotation marks omitted.) As further explained by this Court,

"Duress" is an unlawful restraint, intimidation or compulsion of another to such an extent and degree as to induce such other person to do or perform some act which he is not legally bound to do, contrary to his will and inclination. The alleged coercive event must be of such severity, either threatened, impending or actually inflicted, so as to overcome the mind and will of a person of ordinary firmness. To constitute duress, the danger must not only exist, but must be shown to have actually operated upon the mind, and to have constituted the controlling motive for the performance of the act sought to be avoided.

*Green v. YMCA of Memphis*, No. W2014-02190-COA-R3-CV, 2015 WL 6736705, at *4 (Tenn. Ct. App., filed Nov. 4, 2015) (quoting *Cummings Inc. v. Dorgan*, 320 S.W.3d 316, 331–32 (Tenn. Ct. App. 2009)). "The burden of proof lies with the party asserting duress." *Id.*

Wife testified at the February 4, 2014 hearing regarding her duress claim as follows:

Q. Were there any threats or allegations or any statements by your husband that you took as a threat?

A. Yes, sir.

Q. What did he say to you that you took in a threatening, menacing, or otherwise improper fashion?

A. My husband told me that he had information regarding pornographic materials that he was going to use and post against me that he had received from individuals outside of our circle of friends, in addition to the already numerous pictures and things that had been posted of me on the Internet already.

9

\* \* \*

Q. Did you feel that if you did not sign the agreement there would be consequences to you in light of that information?

A. . . . Yes, sir, I did because Mr. Jessee physically blocked my exit from the door and said, "You are not leaving here until this is signed."

\* \* \*

Q. You testified your husband said something to you that you found very unsettling?

A. Yes.

Q. And you felt that there'd be consequences?

A. Uh-huh (affirmative).

Q. But a fair question is, well, you had legal counsel there?

A. Uh-huh (affirmative).

Q. So if you had legal counsel why do you still feel that there was undue pressure?

A. I stood up and asked to leave.

Q. And . . .

A. Three times.

Q. Did you feel that you had the free will ability to leave. . .

A. No.

Q. . . . the mediation?

A. I did not. There were four men there.

10

A. That is my signature, sir, on that contract and I was forced to sign it.

Q. Now, you're – so you're saying Mr. Jessee forced you to sign that contract?

A. Yes, sir.

Husband denied that he had threatened Wife. Both Husband and the mediator, Douglas Tweed, testified that Wife had not been forced to remain at the mediation. The trial court explicitly found Wife's testimony not credible and credited Husband's testimony, stating,

> I do not credit the testimony of Mrs. Richards in regards to her alleged understanding of what occurred at the mediation agreement. I flat out don't do that. I don't think any reasonable trier of fact could find her to be credible under all the circumstances I tried to describe here today.

The issue of duress in this case hinges on credibility and "considerable deference must be accorded to the trial court's factual findings." *Collins*, 970 S.W.2d at 943. Mindful of the trial court's decision on credibility, we conclude that the evidence does not preponderate against the trial court's factual findings on Wife's "duress" defenses to enforcement of the MDA.

Regarding the defense of mental incapacity, we have observed:

> An adult is presumed competent, and the party attempting to invalidate a contract based on the theory of mental incapacity bears the "burden of proving that one or both of the contracting parties were mentally incompetent when the contract was formed." [*Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 297 (Tenn. Ct. App. 2001)]. Specifically, persons seeking to show incapacity must prove either "(1) they are unable to understand in a reasonable manner the nature and consequences of the transaction or (2) they are unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of their condition." *Id.* "It is not enough to prove that a person was

11

depressed or had senile dementia; [rather], to prove mental incapacity, the person with the burden of proof must establish, in light of all the surrounding facts and circumstances, that the cognitive impairment or disease rendered the contracting party incompetent. . . ." ***Id.***

***Mitchell v. Kindred Healthcare Operating, Inc.***, 349 S.W.3d 492, 501 (Tenn. Ct. App. 2008). "[I]t is rare indeed for a court to find that a contract is unenforceable based on the unsound emotional state of a contracting party. The party seeking to avoid a contract on this basis must show that he or she had no reasonable perception or understanding of the nature or terms of the contract." ***Beem v. Beem***, No. W2009-00800-COA-R3-CV, 2010 WL 1687782, at *8 (Tenn. Ct. App., filed Apr. 28, 2010) (internal quotation marks omitted).

The only evidence supporting Wife's assertion that she was mentally incompetent at the time of the mediation is Wife's own testimony. There is no medical proof in the record regarding Wife's physical or mental condition. Wife testified that she suffers from post-traumatic stress disorder, multiple sclerosis, and "cognitive dysfunction." Regarding her alleged cognitive dysfunction at the time of the mediation, Wife testified:

> A. At that particular point in time I was suffering from a lack of being able to make clear judgment calls.
>
> Q. How so?
>
> A. I was suffering from – I had not been able to sleep, I had been traumatized, and I was not having the ability to make clear decisions at that point.

This testimony – in two relatively short answers – is the sum total of the evidence Wife presented regarding her mental incapacity. Husband testified that, during the mediation, Wife appeared alert, lucid, responsive, aware of what was going on, and "able to communicate very well." When Wife was asked on cross-examination whether she considered herself to be intelligent, she responded, "as intelligent as you, sir." The trial court noted its own observations of Wife over the course of several hearings, stating that it found her lucid, intelligent, responsive, and that "she knew what she was doing, that she was working with her lawyer." We hold that the evidence does not preponderate against the trial court's judgment Wife did not establish mental incapacity as a defense to the enforcement of the MDA.

12

**C.**

Wife asserts that the MDA should be set aside because it is inequitable. It is well established that "[t]rial courts are afforded wide discretion in equitably dividing marital property." ***Jolly v. Jolly***, 130 S.W.3d 783, 785 (Tenn. 2004) (citation omitted). "Appellate courts generally defer to the trial court's decision unless it is inconsistent with the factors in Tennessee Code Annotated section 36–4–121(c)[4] or the evidence preponderates against the trial court's ruling." ***Id.*** at 785-86 (footnote added). We

---

[4] In making equitable division of marital property, the court shall consider all relevant factors including:

> (1) The duration of the marriage;
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
> (4) The relative ability of each party for future acquisitions of capital assets and income;
> (5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
> (B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.
> (6) The value of the separate property of each party;
> (7) The estate of each party at the time of the marriage;
> (8) The economic circumstances of each party at the time the division of property is to become effective;
> (9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
> (10) The amount of social security benefits available to each spouse; and
> (11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c).

13

review the trial court's approval and incorporation of the MDA, mindful that it is a settlement agreement negotiated and freely executed by both parties, who each had the benefit of counsel.

In her brief, Wife argues that the handwritten MDA is inequitable because, "[p]rimarily, it is illegible." It is not illegible. The trial court stated that it read the agreement, as have we. The trial court also heard counsel summarize and discuss its terms. As already noted, it provides for $550.091.27 in marital assets to Husband, and $507,983.21 to Wife. The marital assets not explicitly mentioned in the MDA and its attachments, reflecting several relatively small pensions and about $3,200 in savings bonds, were divided equally by the trial court. Husband agreed to pay alimony of $1,000 per month for 48 months. He will be 67 years old when the four-year alimony obligation ends. Wife has received disability payments since 2005 in the approximate amount of $5,000 per month. Husband's income is not established by the record, although statements of counsel to the court at the hearing suggest it may be in the neighborhood of $160,000 per year. Both parties are relatively well educated: Wife has an undergraduate degree in marketing and economics and a master's degree in business. She worked as a hospital administrator, among other things, before her health declined. Wife testified that she is able to drive an automobile, take care of her house, pay her bills, and to get along in society "somewhat with help."

The trial court reviewed the terms of the MDA and found them to be equitable. The evidence does not preponderate against the equity in the division decreed by the trial court. Consequently, we affirm the trial court's judgment pertaining to the division of the parties' marital property.

### D.

Finally, Wife argues that the trial court's refusal to grant her a continuance before the hearings on November 5, 2014, and February 4, 2015, was an abuse of discretion and prejudicial error. "The granting or denial of a motion for a continuance lies in the sound discretion of the court[, and t]he ruling on the motion will not be disturbed unless the record clearly shows abuse of discretion and prejudice to the party seeking a continuance." *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415 (Tenn. 1997) (citation omitted). We hold that the procedural history in this case, as set forth by us in section I of this opinion, provides a complete answer to Wife's contention. The trial court granted Wife numerous continuances over Husband's objection before finally deciding it was time to end this case. The record fully supports the trial court's finding that Wife "has done about everything she can do to delay the end of this case." At the conclusion of the February 4, 2014, hearing, the trial court said:

14

I think if the record isn't clear on anything – I mean what an appellate court might do with this is I think the Court's bent over backwards to ensure [Wife] had her day in court.

We agree. The trial court demonstrated admirable patience in dealing with Wife's dilatory tactics, and did not abuse its discretion by refusing to grant her a further continuance.

## V.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellant, Penny Arvidson Richards. The case is remanded for enforcement of the trial court's judgment and collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE