IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 22, 2023 Session

**JAMES WILLIAMS v. SMYRNA RESIDENTIAL, LLC ET AL.**

**Appeal by Permission from the Court of Appeals
Circuit Court for Rutherford County
No. 78245    Bonita Jo Atwood, Judge**

———————————————————

**No. M2021-00927-SC-R11-CV**

———————————————————

SHARON G. LEE, J., dissenting.

To enforce and compel arbitration in this case, the majority rewrites a health care facility admission contract, disregards the Durable Power of Attorney for Health Care Act, ignores precedent, and creates confusion in an important area of the law. I respectfully dissent.

Granville Earl Williams, Jr., signed a durable power of attorney (not a power of attorney for health care) naming his daughter, Karen Sams, as his attorney-in-fact. The power of attorney granted Ms. Sams certain powers but did *not* give her the authority to make health decisions for her father. Under the Durable Power of Attorney for Health Care Act, "[a]n attorney in fact under a durable power of attorney for health care may not make health care decisions unless . . . [t]he durable power of attorney for health care specifically authorizes the attorney in the fact to make health care decisions." Tenn. Code Ann. § 34-6-203(a)(1) (2015).

Three years after signing the power of attorney, Mr. Williams moved to an assisted living facility. The facility allowed Ms. Sams to sign its admission agreement as Mr. Williams's attorney-in-fact. The admission agreement contained an alternative dispute resolution clause and an arbitration agreement. Under *Owens v. National Health Corporation*, 263 S.W.3d 876 (Tenn. 2007) (abrogated on other grounds by *Welch v. Oaktree Health & Rehab. Ctr., LLC*, 674 S.W.3d 881 (Tenn. 2023)), the signing of a health care facility admission agreement is a health care decision. Ms. Sams had no authority as her father's attorney-in-fact to make a health care decision for him.

Even though the facility made a mistake by admitting Mr. Williams without proper authority, it seeks to enforce the arbitration agreement contained in the invalid admission agreement. The majority remedies the facility's error by holding the arbitration agreement contained in the admission agreement was a separate agreement and by severing the arbitration agreement from the admission agreement. Yet the majority never explains how Ms. Sams could bind her father to arbitration when she had no authority to sign the admission agreement that contained the arbitration provisions. The majority effectively overrules *Owens* without saying so; its effort to distinguish *Owens* is weak. The trial court and the Court of Appeals correctly decided this case. I would affirm their judgments.

The admission agreement makes clear that it contains an arbitration agreement that was attached as "Exhibit C and incorporated herein." The admission agreement also provides that the "terms and conditions of arbitration under this agreement are contained in the Arbitration Agreement and incorporated herein by reference." Directly above the signature lines of the admission agreement is the warning that it "CONTAINS" an enforceable and binding arbitration agreement. The term "contain" has been defined as "to have within: hold" and "to consist of wholly or in part: comprise, include." *Contain*, *Webster's Third New International Dictionary* 491 (1993). The parties to the agreement were clear about their intent that the arbitration agreement was part of the admission agreement—not a separate agreement.

The admission agreement also contains an integration or merger clause which means the parties intended that all of their agreements related to the subject matter of the agreement were to be integrated or merged into one writing, which represented the entire contract. *See*, *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, 566 S.W.3d 671, 697 n.27 (Tenn. 2019) ("[A] typical integration clause . . . states specifically that the contract constitutes the final and entire agreement between the parties . . . .") (citing Uri Benoliel, *The Interpretation of Commercial Contracts: An Empirical Study*, 69 Ala. L. Rev. 469, 481 & n.75 (2017) ("A merger clause, known also as an 'integration' . . . clause, merges all pre-contractual negotiations between the parties into the written contract.")). Yet the majority treats the admission and arbitration agreements as two separate contracts.

It is a fundamental principle of Tennessee contract law that unless there is "fraud, mistake, or some other defect, our courts are required to interpret contracts as written, giving the language used a natural meaning." *Eberbach v. Eberbach*, 535 S.W.3d 467, 478 (Tenn. 2017) (citing *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386–87 (Tenn. 2009)). This basic "rule does not change or lose its force because the parties to an agreement are before an appellate court. Indeed, one of the bedrocks of Tennessee law is that our courts are without power to make another and different contract from the

- 2 -

one executed by the parties themselves." *Id.* (citing *Dubois v. Gentry*, 184 S.W.2d 369, 371 (Tenn. 1945); *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975)); *see also Individual Healthcare Specialists, Inc.*, 566 S.W.3d at 701 ("A court is not at liberty to make a new contract for parties who have spoken for themselves." (quoting *Smithart v. John Hancock Mut. Life Ins. Co.*, 71 S.W.2d 1059, 1063 (Tenn. 1934))); *Garrison v. Bickford*, 377 S.W.3d 659, 670 (Tenn. 2012) ("[W]e 'cannot under the guise of construction make a new and different contract for the parties . . . .'" (quoting *Memphis Furniture Mfg. Co. v. Am. Cas. Co.*, 480 S.W.2d 531, 533 (Tenn. 1972))).

The controlling case in this area of health care law is *Owens*, which held that an attorney-in-fact acting under a durable power of attorney for health care was authorized to sign a nursing home contract, including its arbitration provisions. 263 S.W.3d at 885. Based on the language of the Durable Power of Attorney for Health Care Act, the Court concluded that an attorney-in-fact acting under a durable power of attorney for health care could sign a nursing home contract, including its arbitration provision, because this action was necessary to consent to health care. *Id.* at 884. The *Owens* Court wisely did not sever the arbitration agreement from the admission agreement, noting that to do so would create practical problems and make it more difficult to obtain health care:

> [The] purported distinction between making a legal decision and a health care decision fails to appreciate that signing a contract for health care services, even one without an arbitration provision, is itself a "legal decision." The implication of the plaintiff's argument is that the attorney-in-fact may make one "legal decision," contracting for health care services for the principal, but not another, agreeing in the contract to binding arbitration. That result would be untenable. Each provision of a contract signed by an attorney-in-fact could be subject to question as to whether the provision constitutes an authorized "health care decision" or an unauthorized "legal decision." Holding that an attorney-in-fact can make some "legal decisions" but not others would introduce an element of uncertainty into health care contracts signed by attorneys-in-fact that likely would have negative effects on their principals. Such a holding could make it more difficult to obtain health care services for the principal. And in some cases, an attorney-in-fact's apparent lack of authority to sign an arbitration agreement on behalf of the principal presumably could result in the principal being unable to obtain needed health care services. For example, a mentally incapacitated principal could be caught in "legal limbo." The principal would not have the capacity to enter into a contract, and the attorney-in-fact would not be authorized to

do so. Such a result would defeat the very purpose of a durable power of attorney for health care.

263 S.W.3d at 884–85.

Ms. Sams did not have a health care power of attorney; thus, under *Owens*, she had no authority to sign the admission agreement which was a health care decision. It follows then that the admission agreement was not binding, and nothing in the admission agreement, including the arbitration provision, was enforceable.

Our holding in *Owens* has been applied by many courts. As Justice (then Judge) Kirby correctly noted in *Barbee v. Kindred Healthcare Operating, Inc.*, No. W2007-00517-COA-R3-CV, 2008 WL 4615858 (Tenn. Ct. App. Oct. 20, 2008), "[e]xecution of the documents admitting the Decedent to the Ripley skilled-care facility, including execution of the accompanying arbitration agreement, is clearly a 'health care decision' within the meaning of the [Tennessee Health Care Decisions] Act." *Id.* at *11 (citing *Owens*, 263 S.W.3d at 883–85); *see, e.g.*, *Jones v. Allenbrooke Nursing & Rehab. Ctr. LLC*, No. W2019-00448-COA-R3-CV, 2019 WL 6842372, at *3–4 (Tenn. Ct. App. Dec. 16, 2019) ("Allenbrooke contends that the POA grant of power to Ms. Jones over Ms. Nesbitt's 'claims and litigation,' and '[a]ll other matters' inured her with the authority to bind Ms. Nesbitt to arbitration. The flaw in Allenbrooke's argument is that the execution of admission documents at a health care facility is a healthcare decision."); *Watson v. Quince Nursing & Rehab. Ctr., LLC*, No. W2019-00261-COA-R3-CV, 2019 WL 6877897, at *5 (Tenn. Ct. App. Dec. 17, 2019) ("[E]ven though the arbitration agreement at issue was not required for admission, it was nevertheless 'part of the admission process,' and we decline[] to draw a distinction between a health care decision and a legal decision in the nursing home admission process." (quoting *Bockelman v. GGNSC Gallatin Brandywood LLC*, No. M2014-02371-COA-R3-CV, 2015 WL 5564885, at *6 (Tenn. Ct. App. Sept. 18, 2015))); *Bockelman*, 2015 WL 5564885, at *5–6 (stating that "our Supreme Court has held that the decision to admit a patient to a nursing home clearly constitutes a health care decision" and noting that, "[a]lthough agreeing to arbitrate claims was not required for admission, the ADR Agreement was part of the admission process" (internal quotation marks omitted) (quoting *Owens*, 263 S.W.3d at 884)); *Mitchell v. Kindred Healthcare Operating, Inc.*, 349 S.W.3d 492, 498 (Tenn. Ct. App. 2008); *Necessary v. Life Care Ctrs. of Am., Inc.*, No. E2006-00453-COA-R3-CV, 2007 WL 3446636, at *5 (Tenn. Ct. App. Nov. 16, 2007).

Two federal district court decisions, *Crawford v. Allenbrooke Nursing and Rehabilitation Center, LLC*, No. 2:21-cv-02054-TLP-tmp, 2021 WL 3926244 (W.D. Tenn. Sept. 1, 2021) and *Sykes v. Quince Nursing and Rehabilitation Center, LLC*, No. 2:19-cv-

02602-SHL-tmp, 2020 WL 7866881 (W.D. Tenn. Sept. 1, 2020), support the conclusion that an arbitration agreement signed as part of the admission process to a health care facility is a health care decision. The *Crawford* court, in addition to relying on the language of the arbitration agreement itself, independently analyzed Tennessee law before concluding that "[s]igning the [arbitration] Agreement was a health care decision under Tennessee law . . . [I]n *Owens v. National Health Corp.*, the Tennessee Supreme Court held that admitting someone to a nursing home 'clearly constitutes a "health care decision"'" under § 34-6-201." 2021 WL 3926244, at *7 (internal citations omitted) (quoting *Owens*, 263 S.W.3d at 884).

The majority's reasoning seems to turn on its conclusion that the arbitration agreement here was optional and the agreement in *Owens* was mandatory. Yet as Justice Kirby notes in her dissent, this distinction is not factually sound as it is not clear from *Owens* that the arbitration clause was mandatory. The *Owens* opinion does not make the optional-mandatory distinction; this Court is not bound by any party concession on this issue. *State v. Hester*, 324 S.W.3d 1, 69 (Tenn. 2010); *Barron v. State, Dept. of Hum. Servs.*, 184 S.W.3d 219, 223 (Tenn. 2006). In any event, it is a distinction without a difference. Whether the arbitration agreement in *Owens* was optional was irrelevant to the issue before the Court—whether a durable power of attorney for health care authorized the attorney-in-fact to sign an arbitration agreement as part of a contract for admission to a nursing home. *Owens*, 263 S.W.3d at 882. The decision to admit a person to a health care facility is not a single admission decision; it involves many decisions about living arrangements, services, and numerous other aspects of the person's life. Some directly pertain to health care, and some do not. Similarly, many decisions are not required to be made in a certain way, but they are still required to be made upon admission.

The arbitration agreements in *Jones*, *Watson*, *Bockelman*, *Mitchell*, and *Barbee* were all optional, yet the court in each case held their execution to be a "health care decision." *See Jones*, 2019 WL 6842372, at *1 (explaining that the appellee signed a "separate" arbitration agreement); *Watson*, 2019 WL 6877897, at *4 ("a stand-alone arbitration agreement that was not necessary for . . . admission to the facility"); *Bockelman*, 2015 WL 5564885, at *2 (a "stand-alone Alternative Dispute Resolution Agreement" that was "*not* a condition of admission [] or continued residence"); *Mitchell*, 349 S.W.3d at 495 ("a stand-alone agreement" that was "not a precondition to the furnishing of services"); *Barbee*, 2008 WL 4615858, at *1 (an arbitration agreement that was a part of the resident admission agreement and "not a precondition to the furnishing of services"). Thus, these Tennessee courts have held that signing an arbitration agreement is a health care decision, even where the arbitration agreement is described as "separate" or "stand-alone."

Here the facility created its own problem by not requiring Ms. Sams to have the proper authority to sign the admission agreement. The majority's ruling compounds that error by changing well-settled law to enforce arbitration and raising more questions than it answers. Did Ms. Sams have authority to sign the admission agreement when she was acting under a durable power of attorney that did not allow her to make health care decisions? If she had no authority to sign the admission agreement, then how is the admission agreement that contained the arbitration agreement valid? In practice, if a facility cannot legally admit a patient, presumably there is no admission and no treatment. So, what is there to arbitrate? How can there be arbitration without a valid admission? How much of the *Owens* decision and its substantial progeny remain good law, and how much has been silently overruled by today's decision?

Besides creating confusion, the majority's ruling causes practical problems for health care facilities and individuals. Under today's decision, it appears an individual acting on behalf of another person during the health care admission process must have a health care power of attorney to execute the admission agreement that contains the arbitration agreement *and* a general durable power of attorney to execute the arbitration agreement contained in the admission agreement. This will needlessly complicate health care admissions, make it more difficult for individuals to obtain health care, and require individuals who seek health care to incur additional legal costs.

All of this could be avoided by a simple, straightforward application of the Durable Power of Attorney for Health Care Act as construed by *Owens*. The execution of a health care admission agreement, and all parts of that agreement, is a health care decision that requires an attorney-in-fact to have a power of attorney specifically granting the attorney-in-fact to make health care decisions—just as the Act intends and requires. This interpretation also has the benefit of providing a clear, consistent, predictable, and understandable rule of law. Unfortunately, the majority muddies the water in this important area of the law.

_____

SHARON G. LEE, JUSTICE