IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 9, 2025 Session

## DELISA ROOSE v. BATH FITTER TENNESSEE, INC.

**Appeal from the Chancery Court for Franklin County**
**No. 21124     Melissa T. Willis, Chancellor**

_____

**No. M2023-01767-COA-R3-CV**

_____

The defendant, Bath Fitter Tennessee, Inc. ("Bath Fitter"), appeals the denial of its motion to submit its contract dispute with the homeowner to arbitration pursuant to the Federal Arbitration Act ("FAA"). The parties executed a written contract for the installation of a new shower for the homeowner, the parts for which were manufactured in Canada. Both parties signed the contract on the front page of the two-page agreement where the signature lines were provided; however, neither party signed or initialed the arbitration provision that appeared on the back of the contract. Although not explicitly stated in its order, it appears that the trial court denied arbitration based upon the Tennessee Uniform Arbitration Act ("TUAA"), which, at the time of contracting, required that arbitration clauses in residential construction contracts be separately signed or initialed. It is undisputed that the materials installed by Bath Fitter were manufactured in Canada; thus, the transaction involves interstate commerce. For that reason, the FAA applies. Because the FAA does not require signatures or initials to indicate approval of arbitration clauses and preempts conflicting state laws that invalidate otherwise valid arbitration agreements, we reverse and remand with instructions to submit the contract dispute to arbitration pursuant to the FAA and stay proceedings until arbitration is complete.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Reversed and Remanded**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

T. Dylan Reeves, Nashville, Tennessee, for the appellant, Bath Fitter Tennessee, Inc.

Floyd Don Davis, Winchester, Tennessee, for the appellee, Delisa Roose.

**OPINION**

## FACTS AND PROCEDURAL HISTORY

On January 31, 2020, Bath Fitter entered into a written contract ("the Contract") for the installation of a shower in a home located in Franklin County, Tennessee and owned by David Roose and Delisa Roose, husband and wife. The front of the two-sided agreement lists, inter alia, the parts Bath Fitter was to provide, the services it was to perform, and the contract price.[1] The terms and conditions, which include an arbitration provision, appear on the reverse side of the Contract.

The Contract identifies the customers as "David & Delisa Roose." David Roose ("Mr. Roose") signed the Contract on a signature line that reads: "Property Owner or Duly Authorized by Property Owner." A representative of Bath Fitter also signed the Contract. The signatures appear only on the front side of the Contract.

In the paragraph that immediately follows the signature lines, the Contract states in capitalized bold print: "**THE NOTICE OF CANCELLATION AND OTHER TERMS AND CONDITIONS ARE PRINTED ON THE REVERSE SIDE OF THE FORM**."

The terms and conditions contained on the reverse side of the Contract include an arbitration provision, which provides in its entirety as follows:

> **21. <u>Applicable Law and Dispute Resolution.</u>** The Contract Documents shall be governed and construed in accordance with the laws of the State of Tennessee. Any claims, dispute or other matter in controversy arising out of or related to this Contract Documents, or the breach of any provision thereof, shall be determined by final and binding arbitration in accordance with the commercial rules of the American Arbitration Association. The place of arbitration shall be Nashville, Tennessee and the non-prevailing party in the arbitration shall pay the prevailing party's reasonable attorney fees, costs, and expenses.

Immediately following the last of the terms and conditions, the Contract contains two additional signature lines for the property owner and Bath Fitter's representative. Neither Mr. Roose nor Bath Fitter's representative signed the back of the Contract. Bath Fitter subsequently installed the shower and was paid in full according to the Contract.

Approximately three years later, on March 27, 2023, Mrs. Roose[2] commenced this action against Bath Fitter in Franklin County Chancery Court, claiming that Bath Fitter

---

[1] The total cost of the parts and services was $5,700.00. The Contract indicated that there was a $400.00 deposit and that $5,300.00 was due on completion. The full price was paid following installation of the shower.

[2] Mr. Roose died prior to the commencement of this action.

breached the Contract by failing to install the bath systems correctly and according to industry standards. As a result of Bath Fitter's "faulty workmanship, poor design, and installation of the bath systems[,]" Mrs. Roose claimed that the shower began to leak in late 2022, which "caused damages to [Mrs. Roose's] home including damages to her floor, mold in the bathrooms, as well as causing the wood in the bathrooms to rot." Mrs. Roose requested compensatory damages in the amount of $50,000.00 for the property damage incurred because of Bath Fitter's alleged breach and requested that the case be heard before a jury.

In May 2023, Bath Fitter motioned the court to refer the dispute to arbitration under the provisions of the FAA and to stay the case pending arbitration. Bath Fitter claimed that the Contract involves interstate commerce because the materials provided and installed by Bath Fitter "consisted of acrylic baths and showers, walls, accessories, and butyl adhesives that were manufactured in Saint-Eustache, Canada and shipped to Tennessee." Thus, Bath Fitter claimed the arbitration provision was governed by the FAA.

Mrs. Roose opposed the motion, averring, inter alia, that the arbitration provision was an unenforceable "one-sided provision of a contract of adhesion" that did not "contain reasonable term[s] considering the circumstances." She also claimed that the Contract was not provided until "after the Plaintiff had provided some sort of partial payment for services," and as such, she had no ability to bargain over the arbitration provision.

The trial court held hearings on Bath Fitter's motion on May 23, November 7, and November 29, 2023, during which it heard oral argument from the parties, but did not receive testimony or evidence other than an affidavit Bath Fitter filed in support of its motion to compel arbitration.[3] From the record before us, it appears that the issues discussed at the hearings included whether Mrs. Roose's claims should be settled by arbitration and, if so, who should arbitrate the dispute, where arbitration should occur, and which arbitration rules should apply.

On December 11, 2023, the trial court entered an order denying Bath Fitter's motion to compel arbitration. While the trial court did not state with specificity whether the FAA or the TUAA governed, it is implicit from the trial court's order that it applied the TUAA, specifically, Tennessee Code Annotated § 29-5-302, which, when the Contract was formed,

---

[3] There is no transcript of the hearings. In June 2024, Bath Fitter filed a Tennessee Rule of Appellate Procedure 24(d) notice that it would not be filing a transcript or statement of the evidence with respect to this appeal. In her appellee brief before this court, Mrs. Roose contends that Bath Fitter's appeal should be dismissed for to its failure to file a statement of the evidence pursuant to Tennessee Rule of Appellate Procedure 24(c). Bath Fitter counters that it was not required to submit a statement of the evidence because "the Trial Court did not hold an evidentiary hearing or receive *ore tenus* testimony." We agree with Bath Fitter because the facts are undisputed, and the issues presented are purely questions of law. Accordingly, the absence of a statement of evidence does not impact our analysis of the issues on appeal.

prohibited the enforcement of private agreements to arbitrate in residential construction contracts unless the arbitration clause was separately signed or initialed by the parties. The court found that while both parties had signed the front of the Contract, neither had signed the back of the Contract, which "had signature lines and dates for both parties to sign and date and contained specific language regarding arbitration." For these reasons, the trial court denied Bath Fitter's motion to compel arbitration.

This appeal followed.

## ISSUES

Bath Fitter presents three issues for our review:

1. The Tennessee Uniform Arbitration Act ("TUAA") contains a[n] additional signature/initial provision that the Federal Arbitration Act ("FAA") does not and, thus, Tennessee state courts cannot enforce the TUAA provision when the FAA applies. Because the FAA governs and does not require an additional signature under the arbitration provision, and both parties signed the contract elsewhere, did the trial court err in denying Bath Fitter's motion to compel arbitration[.]

2. Whether the trial court erred when it denied Bath Fitter's motion to compel arbitration[.]

3. Whether the arbitration clause is enforceable under the FAA[.]

Mrs. Roose raises four issues:

1. Whether the Trial Court appropriately denied Bath Fitter's Motion to Compel Arbitration.

2. Whether the Trial Court's decision was properly supported by adequate findings of fact.

3. Whether the Trial Court's decision was based on all the evidence and filings in the record.

4. Whether the appeal filed by Bath Fitter is frivolous, constituting an award of just damages against Bath Fitter.

## STANDARD OF REVIEW

- 4 -

As our Supreme Court reasoned in *Williams v. Smyrna Residential, LLC*, 685 S.W.3d 718 (Tenn. 2024):

> We review the denial of a motion to compel arbitration de novo, with no presumption of correctness. *Owens*, 263 S.W.3d at 882; *see also* Tenn. R. App. P. 13(d). Both the Federal Arbitration Act and corresponding Tennessee statutes make clear that "agreements to arbitrate disputes should be treated in the same manner as other contracts." *Harvey ex rel. Gladden v. Cumberland Tr. & Inv. Co.*, 532 S.W.3d 243, 266 (Tenn. 2017). So we apply ordinary principles of contract law to determine whether there is an enforceable agreement to arbitrate. *See Taylor v. Butler*, 142 S.W.3d 277, 284 (Tenn. 2004); *Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 85 (Tenn. 1999).
>
> We also review questions of statutory interpretation de novo. *See Lawson v. Hawkins Cnty.*, 661 S.W.3d 54, 59 (Tenn. 2023). We generally interpret statutory terms according to their "natural and ordinary meaning." *State v. Deberry*, 651 S.W.3d 918, 925 (Tenn. 2022) (quoting *Ellithorpe v. Weismark*, 479 S.W.3d 818, 827 (Tenn. 2015)). That is, we ask "how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued." *Id.* at 924 (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 33 (2012)).

*Id.* at 723.

"A trial court's order on a motion to compel arbitration addresses itself primarily to the application of contract law." *Trigg v. Little Six Corp.*, 457 S.W.3d 906, 911 (Tenn. Ct. App. 2014) (quoting *Rosenberg v. BlueCross BlueShield of Tennessee, Inc.*, 219 S.W.3d 892, 903 (Tenn. Ct. App. 2006)).

We review the trial court's resolution of legal issues without a presumption of correctness. *Mitchell v. Kindred Healthcare Operating, Inc.*, 349 S.W.3d 492, 496 (Tenn. Ct. App. 2008) (citing *Johnson v. Johnson,* 37 S.W.3d 892, 894 (Tenn. 2001)).

**ANALYSIS**

I.

Although each party presents several issues for us to consider, we have determined that the dispositive issue is whether the trial court erred by denying Bath Fitter's motion to compel arbitration pursuant to the FAA. Nevertheless, before we address that issue, it is appropriate for us to address a contract formation issue presented by Mrs. Roose.

## A.

Mrs. Roose challenges the enforceability of the arbitration provision on appeal, as she did below, contending that the circumstances surrounding the signing of the Contract render it unconscionable. She specifically claims that the parties' agreement was an adhesion contract which was not presented to her until "after the Appellee had provided some sort of partial payment for services." As a result, Mrs. Roose claims that she was not accorded the ability to bargain over the arbitration provision contained therein. Bath Fitter maintains that the Contract is not an adhesion contract, but that even if it were, it would be enforceable as its terms are not oppressive or unconscionable.

An adhesion contract is "a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996) (citing Black's Law Dictionary 40 (6th ed. 1990)).

We note, however, that adhesion contracts are enforceable under Tennessee law unless the terms are beyond the reasonable expectations of an ordinary person or are oppressive or unconscionable. *Berent v. CMH Homes, Inc.*, 466 S.W.3d 740, 756 (Tenn. 2015) (citing *Taylor v. Butler*, 142 S.W.3d 277, 284 (Tenn. 2004)). "An unconscionable contract is one in which the provisions are so one-sided, in view of all the facts and circumstances, that the contracting party is denied any opportunity for meaningful choice." *Taylor*, 142 S.W.3d at 285 (citing *Haun v. King*, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984)). Whether a contract or a provision thereof is unconscionable is a question of law. *Id.* at 284–85.

In determining whether a contract provision is unconscionable, courts must consider "all the facts and circumstances of a particular case." *Owens v. Nat'l Health Corp.*, 263 S.W.3d 876, 889 (Tenn. 2007) (citing *Brenner v. Little Red Sch. House, Ltd.*, 302 N.C. 207, 274 S.E.2d 206, 210 (1981)). Upon review, we do not find the arbitration provision at issue to be so one-sided or unreasonably favorable to the drafter, Bath Fitter, as to be deemed unconscionable or oppressive. The agreement requires that *both* parties arbitrate claims arising out of the Contract and contains a *bilateral* prevailing party agreement that awards reasonable attorney's fees, costs, and expenses to whoever prevails in the arbitration. Furthermore, the arbitration clause is not hidden in the Contract. The front of the Contract states in bold, all capital letters that important terms and conditions are contained on the reverse side of the form. And on the back page of the Contract, the arbitration clause is conspicuously labeled "**21. Applicable Law and Dispute Resolution**." (Emphasis in original).

We also note that Mrs. Roose alleges that the Contract was not provided until after the deposit, $400.00, was paid; however, there is no evidence in the record to support this allegation. Moreover, the terms and conditions include a notice of cancellation, which allows the customer to cancel the agreement "AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD (3RD) BUSINESS DAY AFTER THE DATE OF THIS AGREEMENT." (Emphasis in original). Thus, Mrs. Roose had three business days to cancel the Contract, which negates the argument that she, or her husband, was prejudiced by the fact they were not sufficiently informed when the Contract was executed.

For the reasons stated above, we find no basis upon which to conclude that the Contract was oppressive or unconscionable. *See Berent*, 466 S.W.3d at 756; *see also Taylor*, 142 S.W.3d at 284.

B.

The parties also dispute whether Mrs. Roose is a "party" to the Contract. Mrs. Roose claims that she was a party, while Bath Fitter insists that she was "merely a non-signatory third-party beneficiary." We need not decide who is correct because, under either theory, Mrs. Roose would be bound by all of the terms of the arbitration agreement. The Tennessee Supreme Court has found that a non-signatory third-party beneficiary is bound by an arbitration provision in a contract when the beneficiary's claim seeks to enforce the contract. *Harvey ex rel. Gladden v. Cumberland Tr. & Inv. Co.*, 532 S.W.3d 243, 271 (Tenn. 2017). By bringing a breach of contract action, Mrs. Roose seeks to enforce the terms of the Contract. Thus, as either a party or a third-party beneficiary, she is bound by the arbitration agreement at issue to the extent that her breach of contract claim falls within the ambit of the agreement.

Furthermore, as noted above, the Contract identifies the customers as "David & Delisa Roose" and Mr. Roose signed the Contract on a signature line that reads: "Property Owner or Duly Authorized by Property Owner." Mr. and Mrs. Roose are the property owners and Mrs. Roose makes no claim that her husband was not authorized to enter into the Contract. Accordingly, Mrs. Roose is bound by the Contract as well as being entitled to enforce the Contract.

C.

Having determined that the arbitration agreement is not oppressive or unconscionable and that Mrs. Roose is bound by the Contract, we now consider whether the agreement is governed by the FAA or the TUAA.[4] It is implicit in the trial court's order

---

[4] As previously noted, the trial court did not make any particular findings as to whether or not the FAA or the TUAA applied. It is evident from the court's final order, however, that it denied Bath Fitter's

that it denied the motion to arbitrate based on a TUAA requirement applicable at the time of contracting that parties must sign or initial their consent to arbitrate. For the reasons set forth below, we have determined that this was error because the Contract involved interstate commerce.

Our reasoning is guided by the legal principle that where the FAA applies, state courts may not apply conflicting state statutes that invalidate arbitration agreements.[5] *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 357 (Tenn. Ct. App. 2001) (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270, 115 S.Ct. 834, 838, 130 L.Ed. 2d 753 (1995)).

In enacting the FAA, Congress "create[d] a body of federal substantive law . . . applicable in state and federal courts." *Southland Corp. v. Keating*, 465 U.S. 1, 12, 104 S.Ct. 852, 859, 79 L.Ed.2d 1 (1984) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 26 n. 32, 103 S.Ct., at 942 n.32)) (quotation marks omitted). Under § 2 of the FAA, a written agreement to arbitrate disputes arising out of a contract involving commerce[6] is valid, irrevocable, and enforceable. 9 U.S.C.A. § 2 (emphasis added). The FAA "embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause." *Perry v. Thomas*, 482 U.S. 483, 490, 107 S. Ct. 2520, 96 L.Ed. 2d 426 (1987); *Frizzell Construction Co., Inc., v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 83 (Tenn. 1999). A contract will be found to involve interstate commerce within the meaning of the FAA when interstate commerce is present in fact. *Allied-Bruce Terminix*, 513 U.S. at 281. "Where the requisite connection with commerce is present, the federal act generally requires a court to stay the proceedings so the parties can resolve the dispute according to the terms of the arbitration agreement." *Owens*, 263 S.W.3d at 883 (citing 9 U.S.C. § 3 (1999)).

The TUAA was enacted in 1983 to provide procedures for the enforcement of arbitration agreements in Tennessee state courts. *Hubert v. Turnberry Homes, LLC*, No. M2005-00955-COA-R3-CV, 2006 WL 2843449, at *4 (Tenn. Ct. App. Oct. 4, 2006) (citing Act of May 11, 1983, ch. 462, 1983 Tenn. Pub. Acts 946). On July 31, 2020, when the Contract was formed, the TUAA contained a requirement that agreements to arbitrate regarding residential structures be separately signed or initialed. Specifically, the TUAA provided that "for contracts relating . . . property and structures utilized as a residence of a

---

motion to compel based upon the TUAA's additional signature/initial provision applicable at the time of contracting.

[5] Under the Supremacy Clause of the United States Constitution, "federal statutes are the supreme law of the land and supersede inconsistent state laws." *Tennessee River Pulp & Paper Co. v. Eichleay Corp.*, 637 S.W.2d 853, 858 (Tenn. 1982) (citing U.S. Const. art. VI, cl. 2).

[6] The FAA's definition of "commerce" includes "commerce among the several states." 9 U.S.C.A. § 1.

party, the clause providing for arbitration shall be additionally signed or initialed by the parties." Tenn. Code Ann. § 29-5-302 (Repealed by 2023 Pub. Acts, c. 319, § 1, eff. July 1, 2023).

"Although the TUAA requires that agreements to arbitrate regarding residential structures be separately signed or initialed, the FAA does not." *Clayton v. Davidson Contractors, LLC*, No. E2013-02296-COA-R3-CV, 2015 WL 1880973, at *3 (Tenn. Ct. App. Apr. 24, 2015). And significantly, as we noted earlier, where the FAA applies, state courts may not apply conflicting state statutes that invalidate arbitration agreements. *Pyburn*, 63 S.W.3d at 357 (citing *Allied-Bruce Terminix*, 513 U.S. at 270). Thus, the TUAA's additional signature/initial requirement may not be imposed on arbitration agreements governed by the FAA. *Clayton*, 2015 WL 1880973, at *3.

Tennessee courts have found on multiple occasions that a construction contract "involves commerce" within the meaning of the FAA where the materials used in construction were manufactured outside of the state. *See State Farm Fire & Cas. Co. v. Easyheat, Inc.*, No. M2006-02363-COA-R3-CV, 2007 WL 3306765, at *3 (Tenn. Ct. App. Nov. 7, 2007) (a construction contract "involve[d] interstate commerce where a substantial amount of materials used in the [construction] were manufactured out of Tennessee by non-Tennessee entities"); *Frizzell*, 9 S.W.3d at 83 (finding that a construction contract for a hotel involved sufficient interstate commerce to fall within the ambit of the FAA due to, *inter alia*, the use of construction materials from out-of-state vendors); *Tennessee River Pulp*, 637 S.W.2d at 855 (holding that a construction contract involving materials and supplies from out-of-state vendors was one "involving commerce" under the FAA).

As the Contract clearly states, the Rooses purchased shower parts from Bath Fitter, including a showerhead, tub wall, crescent shower rod, soap dish, and a 116-inch grab bar, which Bath Fitter installed in the Rooses' home pursuant to the Contract. Bath Fitter's unrefuted affidavit established that the parts were custom-made by Bath Fitter in Saint-Eustache, Canada and shipped to Tennessee. Based upon these undisputed facts and the above authorities, we conclude that the Contract "involves commerce" within the meaning of the FAA. *See State Farm*, 2007 WL 3306765, at *3.

Because the Contract "involves interstate commerce, the [FAA] applies to ensure that the arbitration agreement between the parties is enforced according to its terms." *Frizzell*, 9 S.W.3d at 83–84.

Nevertheless, this decision does not end our inquiry. We must also determine whether Mrs. Roose's claims against Bath Fitter fall within the scope of the arbitration clause. As mentioned above, Mrs. Roose's claim filed March 27, 2023 alleged that Bath Fitter breached the Contract by failing to properly install the shower and remedy subsequent leaks.

As a general matter, arbitration agreements governed by the FAA must be enforced "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute; doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed. 2d 1409 (1960).

> Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which that arbitration will be conducted.

*Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed. 2d 488 (1989) (citations omitted). The question therefore becomes "'what the contract has to say about the arbitrability of petitioner's claim.'" *Frizzell*, 9 S.W.3d at 84 (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57, 115 S. Ct. 1212, 131 L.Ed. 2d 76 (1995)).

When determining whether contracting parties have agreed to arbitrate an issue, courts should apply ordinary principles of contract law. *Guffy v. Toll Bros. Real Est.*, No. M2003-01810-COA-R3CV, 2004 WL 2412627, at *4 (Tenn. Ct. App. Oct. 27, 2004) (citing *Frizzell*, 9 S.W.3d at 84). In Tennessee,

> Contracts should be interpreted according to their plain terms, as those terms are ordinarily understood. *See, e.g., Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, 566 S.W.3d 671, 694 (Tenn. 2019) (explaining that "Tennessee courts give primacy to the contract terms, because the words are the most reliable indicator—and the best evidence— of the parties' agreement when relations were harmonious" (internal quotation marks omitted)); *Action Chiropractic Clinic, LLC v. Hyler*, 467 S.W.3d 409, 412 (Tenn. 2015) (explaining that "[w]e construe contractual language according to its 'plain, ordinary, and popular sense' " (quoting *West v. Shelby Cnty. Healthcare Corp.*, 459 S.W.3d 33, 42 (Tenn. 2014))); *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn. 2008) (same); *Bob Pearsall Motors v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975) (same); *312 Guardian Life Ins. Co. of Am. v. Richardson*, 23 Tenn. App. 194, 129 S.W.2d 1107, 1116 (1939) (same).

*Pharma Conf. Educ., Inc. v. State*, 703 S.W.3d 305, 311–12 (Tenn. 2024).

We find the Tennessee Supreme Court's analysis of a similar factual circumstance in *Frizzell Construction Company, Incorporated v. Gatlinburg* to be instructive on this issue. In that case, the arbitration clause governed "'[a]ll claims, disputes and or other

- 10 -

matters in questions arising out of, or relating to, this Agreement or the breach thereof[.]'" 9 S.W.3d at 81. The contract also contained a choice of law clause stating that the contract would be governed by Tennessee law. *Id.* An issue arose thereafter as to whether the contract had been fraudulently induced. *Id.* at 82. After determining that the contract involved interstate commerce, and was thus governed by the FAA, *Id.* at 82–84, the Court turned to whether the parties had agreed to submit the issue of fraudulent inducement to arbitration. The Court held that:

> [b]y stating that the contract is to be governed by Tennessee law, the parties have indicated their intention to arbitrate all disputes "arising out of, or relating to" their agreement—but only to the extent allowed by Tennessee law. . . . Therefore, because Tennessee law contemplates judicial resolution of contract formation issues, we conclude that the parties have indicated their intention not to submit such issues to arbitration.

*Id.* at 85 (footnote omitted).

The Contract in the instant case contains a broad arbitration clause through which the parties agreed to arbitrate "[a]ny claims, dispute or other matter in controversy arising out of or related to this Contract Documents, or the breach of any provision thereof[.]" Similar to the arbitration agreement in *Frizzell*, the scope of the arbitration clause in this case is limited by applicable Tennessee law. The Contract's "applicable law" provision, which immediately precedes the arbitration clause, provides that "[t]he Contract Documents shall be governed and construed in accordance with the laws of the State of Tennessee." We conclude, as the *Frizzell* Court did, that the inclusion of this choice of law provision evinces the parties' intent to arbitrate claims "arising out of or related to th[e] Contract Documents, or the breach of any provision thereof[,]" but only to the extent allowed by Tennessee law.

This case differs from *Frizzell*, however, in that it involves a breach of contract issue rather than one of contract formation. This distinction is significant because, while Tennessee law prohibits arbitration of contract formation issues, *see Taylor v. Butler*, 142 S.W.3d 277, 283 (Tenn. 2004); *Frizzell*, 9 S.W.3d at 84, breach of contract issues may be submitted to arbitration in Tennessee. *See D & E Const. Co. v. Robert J. Denley Co.*, 38 S.W.3d 513, 519 (Tenn. 2001) (holding that an arbitration clause with similar language indicated the parties' intent to arbitrate breach of contract disputes). Because the parties have agreed to arbitrate breach of contract claims, we hold that Mrs. Roose's claim must be submitted to arbitration pursuant to the FAA as stated in the Contract.

For the reasons set forth above, we reverse the judgment of the trial court and remand with instructions to grant Bath Fitter's motion to compel arbitration of Mrs. Roose's breach of contract claim and stay proceedings until arbitration is complete.

## II.

Mrs. Roose contends that this is a frivolous appeal and that she is entitled to an award of attorney's fees pursuant to Tennessee Code Annotated § 27-1-122, which provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

"A frivolous appeal is one that is devoid of merit, . . . or one that has no reasonable chance of succeeding[.]" *Young v. Barrow*, 130 S.W.3d 59, 67 (Tenn. Ct. App. 2003) (citations omitted). Given that Bath Fitter has prevailed on appeal, we decline to award Mrs. Roose damages for frivolous appeal.

### CONCLUSION

For the foregoing reasons, we reverse the judgment of the chancery court and remand for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellee, Delisa Roose.

_____
FRANK G. CLEMENT JR., P.J., M.S.